# Montg. So. Railway Co. *v.* Sayre.
# Sayre *v.* Montg. So. Railway Co.

*Statutory Proceedings for Condemnation of Right of Way.*

·1. *Taking private property for public uses; constitutional provisions as to pre-payment of compensation, right of appeal, and trial by jury.*—The several clauses in the present constitution relating to the taking of private property for public uses by corporations or individuals (Art. I, § 24; Art. XIV, § 7), construed in connection with the pre-existing law and judicial decisions, were intended to secure just compensation to the owner ·of the property taken, and to compel its payment before the appropriation was complete; also, to secure the right of appeal from the preliminary assessment of damages, without regard to the character of the tribunal or body by which the assessment may be made; and the right to a trial by jury, on the demand of either party, when the error or matter complained of is the amount of damages assessed.

2. *Statutory proceedings for condemnation of right of way; appeal, and trial by jury.*—The statute regulating proceedings for the assessment of damages, when lands are taken by a railroad corporation for the right of way (Code, §§ 1833–40), was intended to carry into effect these constitutional provisions, and must be so construed, if possible, as to effectuate that intention, and to harmonize the statute with the constitution; and thus construing the section which gives an appeal to either party, and declares that " the same proceedings shall ·be had as in ordinary cases of appeal from the Probate [Court] to the higher courts of the State" (§ 1838), it must be held to give an appeal to the Circuit Court, of which a jury is a constituent, thereby securing the right to a trial by jury, if demanded.

3. *Same; right to open and conclude argument.*—In these proceedings, the railroad corporation is the actor, and on appeal, when an assessment of damages by a jury is demanded, is entitled to open and conclude the investigation and the argument.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. JAS. E. COBB.

[Montg. So. Railway Co. v. Sayre.]

These two cases, involving substantially the same questions, were argued and submitted together. Each was a statutory proceeding, instituted by the Montgomery Southern Railway Company, a domestic corporation organized under the general law (Code, §§ 1821–41), seeking to condemn lands for the right of way of its road; the lands in one case belonging to W. D. Sayre, and in the other to A. S. Sayre and M. H. Sayre. In each case, the proceeding was originated by a petition filed by the railroad company, addressed to the judge of probate; alleging that the petitioner desired to obtain the right of way through the defendant's lands, particularly described, and had made application to purchase the necessary strip of land, but had not been able to make any contract with the owner; and asking that commissioners be appointed to determine the compensation to be paid to the owners in each case. Commissioners were appointed, and notice was given to the owners in each case, as required by the order of the court and the statute; and the commissioners made their report under oath, awarding $85 as compensation to A. S. and M. H. Sayre, and $182 to W. D. Sayre. A. S. and M. H. Sayre then made a motion in the Probate Court, or before the judge of probate, to set aside and annul the report and award of the commissioners, and the order appointing them, on these grounds: "Because this court, or the judge thereof, had no jurisdiction, power or authority to make the order appointing said commissioners; because there is no law which authorized said court or judge to make such order or decree; and because the pretended law, under which said order was made and said proceedings had, is unconstitutional, null and void." The court overruled this motion, and the said A. S. and M. H. Sayre then took an appeal to the Circuit Court, not from the order overruling said motion, but "in the matter of the proceedings to assess their compensation for the right of way through their lands by said railroad company." In the Circuit Court, as the bill of exceptions recites, " the said A. S. and M. H. Sayre moved the court to quash said proceedings had in the Probate Court, and to dismiss said cause out of that court; which motion was granted by the court, and said railroad company excepted." The railroad company appeals from this ruling and judgment, and here assigns the same as error.

W. D. Sayre also moved to set aside the award and the order appointing the commissioners, on the same grounds as specified in the other case; and his motion being overruled, he took an appeal to the Circuit Court. In that court, as the bill of exceptions states, "both parties having announced themselves ready, said W. D. Sayre demanded a trial by jury; which was ordered by the court, and the cause was submitted to a jury. Thereupon, said

railroad company claimed the right to open and conclude as plaintiff, and the court conceded the right; to which action and ruling of the court said Sayre duly excepted." The jury assessed the damages, or compensation to be paid, at $365; and the court rendered judgment in Sayre's favor, against the railroad company, for this sum. Afterwards, as the judgment-entry and the bill of exceptions each shows, Sayre moved the court "to set aside the verdict, and vacate the judgment rendered in this cause, and to render judgment vacating the proceedings had in the Probate Court, on the ground that said proceedings were without authority of law, and that this court had no jurisdiction to submit this cause to a jury, nor to render judgment on the verdict of the jury." The court overruled this motion, and the Sayres duly excepted. The appeal is sued out by the Sayres, and they here assign as error the judgment of the Circuit Court, and the several rulings to which they reserved exceptions.

CLOPTON, HERBERT & CHAMBERS, and SAYRE & GRAVES, for Montgomery Southern Railway Company.—(1.) By constitutional provision, the right of eminent domain is reserved to the State unabridged, but just compensation is required to be made to the owner of the property taken; and when the right to take private property is conferred by law on corporations or individuals, it is provided that the right of appeal, and the right to a trial by jury, shall be secured to either party.—Art. XIV, § 7. Before the adoption of the present constitution, the right of appeal was only a legislative right, subject to the control of the General Assembly; and no appeal could be taken except in the cases authorized by law. This provision was intended to take the right of appeal in such cases as this, as it then existed, out of the pale of legislation. The intention was not to create a new right, but to prohibit the General Assembly from taking away from any person the right of appeal as it then existed. Under the laws then existing, an appeal might be taken from the Probate Court, either to the Circuit Court, or to the Supreme Court.—Code, §§ 3954, 3957. Coupled with this right of appeal, by the same constitutional provision, the right of a trial by jury was secured in all cases involving the amount of damages. In the Supreme Court, an appeal is necessarily to be decided from the record alone; but in the Circuit Court, of which a jury is a constituent part, a trial by jury may be claimed, and, when claimed, is matter of right. An appeal must be taken under the rules regulating appeals; and when taken, it is to be tried like other cases, upon the record or bill of exceptions, except that, on a question of damages, either party may demand a trial by jury. The constitutional provis-

ion is self-executing (*Miller v. Marx*, 55 Ala. 322; Cooley's Const. Lim. 101), and comes to the aid of the statute, or, rather, the statute must be construed as if the constitutional provision were incorporated in it.— *United States v. Babbitt*, 1 Black, 58; *United States v. Coombs*, 12 Peters, 72. (2.) W. D. Sayre voluntarily submitted to the jurisdiction of the Circuit Court, and demanded a trial by jury; and he is now estopped from denying the validity of the law under which he claimed it.—*Powell v. Boone*, 43 Ala. 459; *McDonald v. Life Insurance Co.*, 65 Ala. 358. (3.) In such proceedings as this, the railroad company is necessarily the actor, or plaintiff, whether it occupies the position of appellant or appellee; and as plaintiff, is entitled to open and conclude the case. .

TROY & TOMPKINS, for W. D. Sayre, A. S. Sayre, and M. H. Sayre.—(1.) No law providing for an assessment of damages, in such cases as these, can be sustained as valid, unless it provides (1st) for the payment of the compensation before the property is taken, (2d) for an appeal by either party, and (3d) for a trial by jury to determine the damages, on the demand of either party. This law does not provide for a trial by jury, and the right is in effect prohibited by the provision which declares that, on appeals, "the same proceedings shall be had as in ordinary cases of appeal from the Probate [Court] to the higher courts." The *proceedings on appeal* must mean the trial and its incidents, and not the preliminary steps to taking an appeal. There is no provision for a trial by jury, in ordinary cases of appeal from the Probate to the Circuit Court, but such cases are tried on the record, or on bill of exceptions.—Code, §§ 3954–58. If the provisions of the general law could be so modified as to give a trial by jury in such cases, when the appeal is taken to the Circuit Court, the right would be completely taken away whenever the appeal was taken, as it might be, to the Supreme Court, In failing, then, to secure the right to a trial by jury, the statute is unconstitutional and void.—*Tims v. The State*, 26 Ala. 165; *Ex parte Houghton*, 38 Ala. 570; *Thomas v. Bibb*, 44 Ala. 710; *Greene v. Bragg*, 1 Curt. C. C. 311. (2.) The statute being unconstitutional and void, the Probate Court had no jurisdiction of the proceedings, and the Circuit Court acquired no jurisdiction by the appeal.—Cooley's Const. Lim. § 188, note 2, and authorities cited. The proceeding being void for want of jurisdiction, appearance could not amount to a waiver of the defect; and the parties are not estopped from raising the objection after judgment.—Bigelow on Estoppel, 129, 508; 2 Brick. Dig. 157–8, §§ 12, 21; *Miller v. Miller*, 5 Heisk. Tenn. 723; *Mercier v. Chase*, 9 Allen, 242. (3.) It was necessarily incumbent on the party whose land was

sought to be taken, to show the amount of damages he might sustain, or had sustained. The railroad company stands on the defensive, and is not required to adduce any evidence; and the laboring oar being on the owner, he is entitled to open and conclude the argument.—3 Bla. Com. § 366; 1 Greenl. Ev. § 74; 7 Eng. L. & Eq. 578.

BRICKELL, C. J.—The 7th section of the 14th article of the constitution provides, that "Municipal and other corporations and individuals, invested with the privilege of taking private property for public use, shall make just compensation for the property taken, injured or destroyed by the construction or enlargement of its works, highways, or improvements, which compensation shall be paid before such taking, injury or destruction. The General Assembly is hereby prohibited from depriving any person of an appeal from any preliminary assessment of damages, against any such corporations or individuals, made by viewers or otherwise; and the amount of such damages, in all cases of appeal, shall, on the demand of either party, be determined by a jury according to law." The 24th section of the "Declaration of Rights," among other things, provides, that "private property shall not be taken or applied for public use, unless just compensation be made therefor; nor shall private property be taken for private use, or for the use of corporations other than municipal, without the consent of the owner: *Provided, however*, That the General Assembly may, by law, secure to persons or corporations the right of way over the lands of other persons or corporations, and by general laws provide for and regulate the exercise by persons and corporations of the rights herein reserved; but just compensation shall, in all cases, be first made to the owner."

The principal question these cases involve is, whether the statute which authorizes corporations, organized under the general law, for the construction of railroads within the State, to condemn and take private property for the uses of the corporation, secures to the owner the right of appeal from the award of the commissioners appointed to assess the compensation to be paid him, and on such appeal a trial by jury, if such trial is claimed by either party, meets and satisfies the requirements of the constitution in this respect. The provision of the statute, upon the construction of which the question depends, reads: "An appeal may be taken by either party, and the same proceedings shall be had as in ordinary cases of appeal from the Probate to the higher courts of this State."—Code of 1876, § 1838.

Before the adoption of the present constitution, not infrequently, the General Assembly, to serve and accomplish some

public use, delegated not only to counties, political subdivisions of the State, but to municipal and private corporations, and to individuals, the power of eminent domain—the power of taking private property for public uses. The statutes delegating the power, to conform to the constitution, it was settled, must in themselves have provided adequate and appropriate remedies, by which the owner whose property was taken could obtain for it just compensation. Whether payment of the compensation should precede or attend the taking of the property, or whether the mandate of the constitution was satisfied, if an adequate remedy was provided by which it could be obtained, was, in this State, an unsettled question.—*Aldridge v. T., C. & D. R. R. Co.*, 2 Stew. & Port. 199 ; *Sadler v. Langham*, 34 Ala. 311. The remedy most usually provided for ascertaining the compensation, was the verdict or award of viewers, or commissioners, as they were indifferently termed. These generally derived their appointment from a court of record, to whom their report was returned. They were regarded as inferior, statutory tribunals, clothed with a special jurisdiction ; and unless the statute otherwise provided, their action was final and conclusive.—Mills' Eminent Domain, § 322. If errors of law, or irregularities, intervened, apparent on the face of the proceedings, a writ of error, or an appeal, the substitute for a writ of error in our system, would not lie for their revision and correction ; a writ of *certiorari* was the only appropriate remedy which could be employed for that purpose.—*Ex parte Tarleton*, 2 Ala. 35 ; 1st Brick. Dig. 533, §§ 2, 4.

Reading the clause of the constitution to which we have referred in connection with the pre-existing law, it seems manifest, a distinct purpose it was intended to accomplish was the guaranty and security to the owner of just compensation for his property, taken for public uses, and to compel its payment before the taking and appropriation was complete. And such payment, it must be observed, is guarantied and secured, without regard to the agency employed in the taking—whether it is the State, in its sovereign capacity, or a county, one of its political subdivisions, or a municipal or other corporation, or an individual. A provision by which compensation could be obtained was, prior to the introduction of this clause, esteemed an indispensable element to the validity of any statutory enactment, authorizing the taking of private property for public uses. The payment of the compensation before the taking and appropriation is complete, is the plain language, more than once repeated, and the manifest intent of the constitution. Another purpose, equally manifest, confined to a taking by municipal or other corporations, or by individuals invested with the privilege of taking private property for public uses, is, that the parties

[Montg. So. Railway Co. v. Sayre.]

shall not be deprived of —in other words, must have—the right of appeal from the preliminary assessment of damages, without regard to the character of the body or tribunal to which the making of such assessment may be committed. Such body or tribunal remains, as it was known and defined at common law, an inferior, statutory jurisdiction, proceeding by summary methods, and in a course different from that observed and pursued in the courts of common law. But the General Assembly is now prohibited from rendering its action final and conclusive, or from limiting the parties to a mere revision by writ of *certiorari* of errors or irregularities apparent on the face of the proceedings. A remedy by appeal must be afforded, and the revision must be co-extensive with the injury which may be suffered in the course of the proceedings. If the error complained of is the amount of damages assessed, on the demand of either party, on appeal, the damages must be assessed by a jury.

It is contended, that the statute referred to is offensive to the constitution, because, while it authorizes an appeal, the requirement is, that the proceedings on the appeal shall be as in ordinary cases of appeal from the Probate Court to the higher courts of the State; and in the course of such proceedings there is not, and can not be, a trial by jury—the hearing is had by the appellate court, upon the record of the Probate Court, without the intervention of a jury. There is much force in the argument, but we are unable to yield assent to it. The statute was passed soon after the adoption of the constitution, and, doubtless, with the intention of yielding obedience to, and executing the clause or provision under consideration. In its words, the statute is ambiguous; and if it is capable of a construction that will render it consistent with the constitution, affording to the citizen, or to corporations, the substantial rights the constitution intended to confer, that construction must be adopted. Every statute, it is the duty of the court so to construe, as to make it, if possible, harmonious with the constitution, without narrowing the inquiry to the construction which the natural import of the language used may bear. It is said by Judge Cooley: " The duty of the court to uphold a statute, where the conflict between it and the constitution is not clear, and the implication which must always exist, that no violation has been intended by the legislature, may require it in such cases, where the meaning of the constitution is not in doubt, to lean in favor of such a construction of the statute as might not, at first view, seem most obvious and natural." " This is only saying," he adds, " in another form of words, that the courts must construe the statute in accordance with the legislative intent; since it is always presumed the legislature designed the statute to take effect, and not be a nullity."—Cooley Cons. Lim. (4th ed.) 223,

29

top p. And in *Durousseau v. United States* (6 Cranch 307), it was said by C. J. MARSHALL: "The spirit, as well as the letter of a statute, must be respected; and when the whole context of the law demonstrates a particular intent in the legislature to effect a certain object, some degree of implication may be called in to aid that intent."

A close, literal construction, keeping within a narrow significaton of its words, not reading it in connection with the constitution, or in connection with other statutes which, if not *in pari materia*, are subject to the same constitutional provision, and are intended to accomplish a like purpose, would render this statute vain and nugatory. There is no designation of the court to which the appeal may be taken, nor, in the event of an appeal, is there an expression of the mode of hearing or trial, ·except as it may be supposed to lie in the general words, "the same proceedings shall be had as in ordinary cases of appeal from the Probate to the higher courts of the State," if these words should be referred to the proceedings in the appellate court. But, if we keep in mind that the statute was intended, to be effectual, and to execute the constitutional provision, we must construe it as intended to authorize an appeal to a higher court than the Court of Probate, and to a court of which a jury is a constituent. Thus reading it, the Circuit Court of the county is the only higher court to which the appeal may be taken—it is the only court exercising appellate jurisdiction over the Court of Probate, having a jury as a constitnent. The case reaching that court by appeal, the constitution intervenes, and, on the demand of either party, the damages must be assessed by a jury. It is true, that this construction renders it necessary to indulge some degree of implication; but it is not implication the words of the statute repel, and it is necessary to give effect to the spirit and intent of the statute, unless we presume that the legislature did not design it to be effectual. The general words, "the same proceedings shall be had as in ordinary cases of appeal from the Probate to the higher courts of this State," are not, under this construction, left unmeaning and without office to perform. They may well be referred to the proceedings preliminary to the taking of an appeal, the mode of taking it, and of introducing the case into the appellate court. All of these must conform to the usual, ordinary proceedings in cases of appeal from the Court of Probate.

Under this construction of the statute, the Circuit Court erred in quashing the proceedings in the first of these cases, but did not err in refusing to quash them in the second. .

The railroad corporation is the actor in the institution of the proceedings, and if, upon an appeal to the Circuit Court, an assessment of the damages by a jury is demanded, we are of the

opinion, it is entitled to open and conclude the investigation and argument of the cause. It has long been the settled practice in this State, that whatever may be the attitude a case may assume, the plaintiff, the actor in the institution of the proceedings, is entitled to open and conclude the investigation and argument, unless he waives the right of concluding by failing to open the argument.—*Grady v. Hammond*, 21 Ala. 427; *Chamberlain v. Gaillard*, 26 Ala. 504; *Pearsall v. McCartney*, 28 Ala. 110.

The result is, the judgment in the first case is reversed, and the cause remanded; and in the second, the judgment is affirmed.