# Memphis & Charleston Railroad Company v. Birmingham, Shef-field & Tennessee River Railway Company.

*Petition for Certiorari, in Matter of Statutory Proceedings by one Railroad Company to Acquire Right to Cross or Intersect the Road of another.*

1. *Eminent domain; what is "taking of property"*—The crossing or intersecting of the road of one railway company by that of another is the "taking of property," within the meaning of the constitutional provisions requiring compensation to be made.

2. *Same; as affected by constitutional provisions; right to compensation.* Section 21 of Article 14 of the Constitution of Alabama, providing that "every railroad company shall have the right with its road to intersect, connect with, or cross any other railroad," construed in connection with section 7 of the same article of the Constitution, which provides that "municipal and other corporations and individuals invested with the privilege of taking private property, for public use, shall make just compensation for the property taken, injured, or destroyed," &c., does not authorize one railroad company to cross the track of another without making just compensation.

3. *Same; constitutionality of section 1582 of the Code.*—Section 1582 of the Code of 1886, which provides that a railroad company has authority to cross, or to intersect any railroad, and that if such crossing or intersection cannot be made by contract or agreement with the corporation, or association, or persons having or controlling the railroad to be crossed, or with which an intersection is to be made, "on the application of either party, the judge of probate of the county . . . must appoint three arbitrators, . . . who must determine the terms and conditions upon which such crossing or intersection shall be made, . . . and such crossing or intersection must be made in accordance with such award," is in conflict with section 7 of Article 14 of the Constitution of Alabama, prohibiting the General Assembly from depriving any person of an appeal from any preliminary assessment of damages made by viewers, or otherwise.

APPEAL from the Circuit Court of Colbert.
Tried before the Hon. H. C. SPEAKE.

572          SUPREME COURT          [Nov. Term,

[M. & C. R. R. Co. v. B., S. & Tenn. River R'y Co.]

The appellee, the Birmingham, Sheffield & Tennessee River Railway Company, a domestic corporation, on the 5th day of May, 1890, filed an application or petition, to the Hon. John A. Steele, judge of the Probate Court of Colbert county, under section 1582 of the Code, for the appointment of three arbitrators by the probate judge to determine the terms and conditions upon which the petitioner should be allowed to cross, or intersect the track of the appellant, The Memphis & Charleston Railroad Company, near the city of Sheffield, in said county. The Memphis & Charleston Railroad Company filed a motion in that proceeding to dismiss the petition, on the ground that section 1582 of the Code, under which the petition was filed, was unconstitutional, for the reasons, (1) that it fails to provide for notice of the filing of the petition; (2) that it provides no opportunity to defendant to contest the allegations of the petition; (3) that it does not provide for compensation to the injured party; (4) that it does not provide for any appeal; and (5) that it does not provide for a trial by jury. This motion was overruled, and arbitrators were appointed. Thereupon, on the application of the Memphis & Charleston Railroad Company, the proceeding was removed into the Circuit Court under a writ of *certiorari*. In that court, the appellee moved to dismiss the *certiorari*. That motion was sustained, and judgment rendered accordingly. This appeal is from that judgment.

HUMES, SHEFFEY & SPEAKE, for appellant.—The whole case hinges upon the constitutionality of section 1582 of the Code of 1886. We contend that said section is repugnant to the Constitution in several respects : (1.) It fails to provide for notice of the filing of such petition, and hence provides no opportunity to contest the allegations of the petition. The failure to provide for such notice amounts, virtually, to debarring the railroad company whose track is to be crossed from defending the suit.—Constitution of Ala. § 11, Art. 1. Without notice of such filing it could not know what day was set for the hearing, or appear there and contest the allegations of the petition; or, if necessary, object to the appointment of an arbitrator who might be deemed, prejudiced in favor of the other party, or introduce any evidence. This would not be "due process of law," but, rather, a denial of justice.—Const. of Ala. §§ 7, 14, Art. 1; *Wilburn v. McCalley*, 63 Ala. 436; *Hagar v. Reclamation District*, 111 U. S. 701; *Kuntz v. Sumption*, 117 Ind. 1; *Scott v. Toledo*, 36 Fed. Rep. 385; *Zeigler v. South & N. A. R. Co.*, 58 Ala. 594. By this statute, the probate judge is authorized, on the mere appli-

cation of one party to a controversy, to appoint three arbitrators, who are to be final judges in a matter of which the other party has never had notice, and that, too, before the other party has any notice that any matter is to be submitted to arbitration. In other words, the probate judge is authorized to conclusively presume against the railroad company, whose track is to be crossed, all the allegations of the petition for arbitrators, and the fact that arbitration is necessary. See 2 Wood's Railway Law, pp. 825, 827; *Stuart v. Palmer*, 74 N. Y. 183; *Johnson v. Joliet &c. R. Co.* 23 Ill. 202. (2.) Said section does not provide for an appeal, or a trial by jury, and thereby deprives the injured party of that "due process of law" which is guaranteed by sections 7 and 14 of Article 1 of the Constitution, and also section 7 of Article 14. *Railroad Co. v. Sayre*, 72 Ala. 443; *Vanhorne v. Dorrance*, 2 Dallas C. C., 304; 46 Ga. 43; s. c. 12 Am. Rep. 585. (3.) Said section is unconstitutional, because it does not provide for the assessment or payment of just compensation or damages to the railroad company whose track is intersected or crossed. This is in direct violation of section 24 of Article 1, and section 7 of Article 14 of the Alabama Constitution. *Railroad Co. v. Sayre, supra;* 3 Brick. Dig. p. 137, §§ 148, 149; *Scott v. Toledo*, 36 Fed. Rep. 385; s. c. 1 L. Rep. An. 688; 13 Wallace, 166; 112 U. S. 465; *Southwestern R. Co v. Southern & Atlantic Telegraph Co.*, 46 Ga. 43; 35 Mich. 265; 79 Mich. 471; 2 Wood's Railway Law, pp. 799-818, and cases cited. The statute not only authorizes the appointment of all the arbitrators by one party, before the other party has any notice of the proceeding, but fails to provide for the award of any damages, or the payment of any compensation to the injured railroad, and fails to provide any method of *enforcing* the payment of compensation.

Appellee will contend that section 1582 is constitutional, under section 21 of Article 14 of the Constitution, which says nothing about compensation being paid. This provision, however, is to be taken in connection with section 24 of Article 1, and section 7 of Article 14, which provide that "just compensation shall in all cases be first made to the owner."

If said statute is unconstitutional on any of the grounds mentioned, the Circuit Court erred in dismissing the *certiorari*. *Ex parte Boynton*, 44 Ala. 261; *Commissioners v. Hearn*, 59 Ala. 371; 3 Brick. Dig. p. 106.

SIMPSON & JONES, *contra.*—There is nothing in the point that section 1582 of the Code does not provide for notice, as

it is not necessary that such details should be provided for, and the record shows that, as matter of fact in this case, notice was given.   2. Said section is not unconstitutional by reason of a failure to provide for a jury trial, because, (*a*) the right of trial by jury, which is guaranteed by the Constitution (Article 1, section 2), provides only that the right of trial by jury shall remain inviolate, which means that the right shall remain as it was at common law, that is, that, as to those rights of property, which were triable at common law by a jury, that right shall remain.   So that, as to rights which have since come into existence, by statute or otherwise, the legislative branch of the government may assign their adjudication to any court which it may   choose.—*Boring v. Williams*, 17 Ala. 510 ; *Tims v. State*, 26 Ala. 165 ; *Chambers v. Stringer*, 62 Ala. 596.   (*b*) The crossing of one railroad by another is not the "taking of the property" of another, because the Constitution gives to every railroad the right to cross every other one, and when one road acquires a right of way, it is subject to the right of every other railroad to cross it, and there remains no right of property to adjudicate, but only to determine the terms of the crossing. Constitution, Article 14, section 21 ; Code, § 1582.   This court has evidently taken this view of this class of rights. *Mobile & Girard R. Co. v. Alabama Midland R'y. Co.*, 87 Ala. 505.   3. But, even if this case involved a question of rights protected by this constitutional guaranty, this court has decided that, although the statute does not mention it, the right to appeal to a jury remains.—*Montgomery Soathern R. Co. v. Sayre*, 72 Ala. 443 ; *Woodward Iron Co. v. Cabaniss*, 87 Ala. 328.

THORINGTON, J.—The sole question raised by this appeal involves the constitutionality of section 1582 of the Code of 1886.   This section prescribes the mode by which one railroad company may acquire the right to cross or intersect the road of another, and appellant insists the statute is unconstitutional for the following reasons : 1.   It fails to require notice of the filing of the petition, and hence fails to provide an opportunity to controvert its allegations.   2. It fails to provide for an appeal or a trial by jury.   3. It does not provide for the assessment or payment of just compensation to the injured party.

While the authorities are not altogether uniform or harmonious in regard to the necessity of notice of the initiatory steps in proceedings of this class, it can not be doubted that under constitutional provisions such as exist in this State

no statute authorizing the taking of property for a public use by corporations or individuals invested with the exercise of the right of eminent domain is a valid enactment, which fails to secure to the owner of property so taken the right of an appeal from any preliminary assessment of damages by viewers or otherwise, by which a trial by jury may be had according to the course of the common law, or which fails to provide that such compensation shall first be made to the party injured; and in considering the question we shall confine the inquiry to the last two grounds urged by appellant against the validity of the act.

The constitutional provisions by which the question under consideration is to be tested are as follows: Article 1, § 24. "That the exercise of the right of eminent domain shall never be abridged, nor so construed as to prevent the General Assembly from taking the property and franchises of incorporated companies, and subjecting them to public use the same as individuals. But private property shall not be taken or applied for public use, unless just compensation be first made therefor;  .    .    .    .    .    .    .    . Provided, however, That the General Assembly may, by law, secure to persons or corporations the right of way over the lands of other persons or corporations, and by general laws provide for and regulate the exercise by persons and corporations of the rights herein reserved; but just compensation shall, in all cases, be first made to the owner," &c.    Article XIV, § 7: "Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for the property taken, injured, or destroyed by the construction or enlargement of its works, highways or improvements, which compensation shall be paid before such taking, injury or destruction. The General Assembly is hereby prohibited from depriving any person of an appeal from any preliminary assessment of damages against any such corporations or individuals made by viewers, or otherwise; and the amount of such damages in all cases of appeal shall, on the demand of either party, be determined by a jury according to law."    Article XIV, § 21:  "All railroads and canals shall be public highways. .    .    .    .    .    .    .    .    .    .    . Every railroad company shall have the right with its road to intersect, connect with, or cross any other railroad, and shall receive and transport, each, the other's freight, passengers, and cars, loaded or empty, without delay or discrimination."

In the absence of constitutional restraints, the power of

the State to take private property for the public use reaches every species of property within its jurisdiction; even when acquired by grant from the State. It is a power inhering in sovereignty, and it has been declared that it is impliedly reserved in every grant, and that the franchise of a corporation is not exempt. It may be taken in whole or in part, and, with the other property of the corporation, devoted to other or similar public uses. And in this State it is extended by express constitutional provision to the property and franchises of corporations, "the same as individuals." Art. 1, § 24. *Anniston & C. Ry. Co. v. Jacksonville G. & A. Ry. Co.*, 82 Ala. 297. The only restrictions as to the manner of the exercise of this power by the State are to be found in the Constitution, "for nothing of less authority than the organic and fundamental law which lays out the very frame of government could impose them."—6 Amer. & Eng. Encyc. of Law, pp. 812, 513.

It is clear from the provisions of the Constitution of this State, quoted above, that two restrictions are in express terms imposed by the organic law upon the right of the State to invest individuals and corporations with the exercise of this power, viz.: that just compensation shall first be made to the owner in *all* cases; and that, in cases where private property is taken, injured, or destroyed by the construction or enlargement of the works, highways or improvements of individuals, municipal or other corporations invested with the privilege of taking private property for public use, the right of appeal from the preliminary assessment of damages made by viewers or otherwise shall be secured, upon which appeal, on the demand of either party, the damages shall be determined by a jury according to law. In *Smith v. Inge*, 80 Ala. 283, it is said : "The State itself can not, in the exercise of the right of eminent domain, take private property for public uses, without a regular judgment of condemnation in a proper judicial proceeding, first making payment of just compensation to the owner."

If, therefore, the crossing or intersecting of the road of one railway company by the road of another is taking, injuring or destroying private property, by the construction or enlargement of the works, highways or improvements of such company, within the meaning of the Constitution, then the constitutional restrictions or limitations to which we have referred are applicable, and the exercise of such right can only be sustained when it is claimed under a valid legislative enactment by which the rights contemplated by these

constitutional restrictions are secured to the owner of the property so taken, injured or destroyed.

There is abundant authority in the text-books and adjudicated cases for the proposition that the crossing or intersecting of the road of one railway company by that of another is the taking of property within the meaning of constitutional provisions requiring compensation to be made. That to constitute a taking of property it is not necessary there should have been an actual disseisin of the owner, but that it is a "taking" to invade his property by superinduced additions of water, sand, earth, or other material, or by having any artificial structures placed upon it so as effectually to destroy or impair its usefulness.—6 Amer. & Eng. Encyc. of Law, p. 542. And in the case of *Pumpelly v. Green Bay Co.*, 13 Wal. 166, it is said that a serious interruption to the common and necessary use of property may amount to a taking within the meaning of constitutional provisions, and entitle the owner to compensation. In the case of *Chicago & A. R. R. Co. v. Springfield & N. W. R. R. Co.*, 67 Ill. 147, it was held, in a case of the construction of one railroad across the track of another, that the company whose track is crossed is entitled to recover not only just compensation for the land taken, but also for such incidental loss, inconvenience, and damage as might reasonably be expected to result from the construction and use of the crossing in a legal and proper manner. The same principle is recognized in the following cases: *Peoria & P. U. R. R. Co. v. Peoria & F. R. Co.*, 10 Amer. & Eng. R. R. Cases, 129; *Lake Shore & M. S. R. R. Co. v. Cincinnati, S. & C. R. R. Co.*, 30 Ohio St. 604.

So, also, under an act which allowed damages when lands were "injuriously affected," it was held that the test applied to determine the proper meaning of the words, "injuriously affected," as giving a right to compensation, was whether the act done in carrying out the works in question was an act which would have given a right of action if the works had not been authorized by the statute. In other words, if the act affecting the land had been done by an individual he would be liable for damages.—*Delaplaine v. Chicago & N. W. R. R. Co.*, 42 Wis. 214. And in *McCarthy v. Metropolitan Board of Works*, L. R. 8 C. P. 209, it is said: "The act, therefore, injuriously affecting, must be that which would be wrongful but for the statute. It is enough . . . . . that it might be prevented by injunction."

The question can scarcely be regarded as an open one in this court. While there is no case, so far as we have dis-

covered, which in express terms decides that the crossing or intersecting of one railroad by another is the taking of property within the meaning of the Constitution, there are cases in which the principle is recognized. In the case of *Mobile & Girard R'y. Co. v. Ala. Midland R'y. Co.*, 87 Ala., at page 508, it is said : "The statutes above referred to confer all the authority to take private property, whether of persons or corporations, that exists in railroad companies organized under the general laws. Authority *to take* the franchise, or any part, of another corparation, is not given in express terms, *except so far as necessary to cross or intersect another railroad*, and, if not necessarily implied, it does not exist." In the above quotation we have italicized the language bearing on this particular question. And in the case of *Highland Avenue & Belt R. R. Co. v. Birmingham Union R'y Co.*, 93 Ala. 505, there was a controversy between two corporations as to their respective rights growing out of the crossing of their several tracks on a certain street; the complainant company seeking to enjoin the other from building its track across the former's without making compensation. The court held that it was not a proper case for the interposition of a court of equity but that the parties should be remitted to their remedies at law.

We can not yield assent to the argument of appellee's counsel that Article XIV, § 21 of the Constitution invests railroad companies with the right to cross and intersect the tracks, the one of the other, without compensation. The argument is that "the crossing of one railroad track by another is not the taking of the property of another, because the Constitution gives to every railroad the right to cross any other one, and when one road acquires a right of way it is subject to the right of every other to cross it, and there remains no right of property to adjudicate, but only to determine the terms of the crossing." There would be force in the argument if this section stood alone in the Constitution, and if there were nothing else in the section itself to indicate a contrary intent. But this section is to be construed in connection with section 24 of Article 1, and section 7 of Article XIV, and with all other provisions of the Constitution touching the subject of eminent domain. The language of section 24, Article I, is that "compensation shall, in all cases, be first made to the owner." The language of section 7, Article XIV, is, "shall make just compensation for the property taken, injured or destroyed." If the provisions of the two sections last referred to had been embodied in section 21, Article XIV, upon which appellee's argument is

based, it could not be questioned that, construing the section as a whole, the right to cross and intersect other roads was subject to just compensation first to be made. That those provisions are in separate sections can not change the rule of construction; they are to be construed together, and operative effect given to each. Appellee's contention, however, is repelled by the language of the section itself. That part of it material to the question is as follows: "Every railroad company shall have the right with its road to intersect, connect with, or cross any other railroad, and shall receive and transport, each, the other's freight, passengers, and cars, loaded or empty, without delay or discrimination."

The utmost latitude of construction would not authorize the conclusion that railroad companies are required by this section to receive and transport, each, the other's freight, passengers and cars, without compensation; yet, this result would inevitably follow if the argument of appellee is sound, for it is equally as applicable to this requirement in the section as to that relating to the crossing and intersecting of roads. We entertain no doubt that the intention of the framers of the Constitution was that each of the burdens contemplated by this section as being imposed by one railroad company upon the property or franchises of another should be subject to the other constitutional provisions securing the pre-payment of just compensation; and such is the legal operation and effect of the various constitutional provisions when construed as a whole. The rights contemplated by section 21, Article XIV, of the Constitution, and attempted to be conferred by section 1582 of the Code, involve, therefore, the taking or injuring of property, and any statute designed to provide for the exercise or enforcement thereof must, as we have said, secure to the owner of the property so taken or injured, just compensation, which shall be paid before the property is taken or injured, and the right of appeal to a court in which, if demanded, the damages may be determined by a jury "according to law," that is, by the decisions of this court and according to the course of the common law, a jury of twelve men.—*Ala. Midland R'y. Co. v. Newton,* 94 Ala. 443; *Postal Tel. Cable Co. v. Ala. G. S. R'y. Co.,* 92 Ala. 331; *Woodward Iron Co. v. Cabaniss,* 87 Ala. 328.

It is entirely obvious, from an inspection of the section itself, (Code, 1852,) that it contains no provision for such an appeal; unless, therefore, the right is secured under some other or general statute relating to appeals, it is fatally open to the objection.

The case of *Montgomery Southern R'y. Co. v. Sayre,* 72 Ala. 443, was an *ad quod damnum* proceeding under a statute which provided for an appeal, but failed to designate the court to which the appeal should be taken, the language being, "the same proceedings shall be had as in ordinary cases of appeal from the Probate Court to the higher courts of the State." It was held that the Circuit Court of the county was the only "higher court" having a jury as a constituent, and that the statute by implication gave the right of appeal to that court. The case of *Woodward Iron Co. v. Cabaniss,* 87 Ala. 328, grew out of an *ad quod damnum* proceeding under a statute (Code, § 3210,) which gave no appeal to a court of which a jury was a constituent part. It was held that under the general statute regulating appeals from the Probate Court, (Code, § 3640,) construed in connection with the constitutional provision relating to appeals and a jury trial in such cases, an appeal would lie from the Probate to the Circuit Court, and that a jury of twelve men could there be empanelled to assess the damages.

We have referred to these decisions for the purpose of showing that the constitutional right of appeal and trial by jury in this class of cases has been jealously guarded by this court, and also for the purpose of showing that they afford no support to the statute we now have under consideratin. The case of *Montgomery So. R'y. Co. v. Sayre, supra,* furnishes neither authority nor analogy for the decision of this case, for the reason that there is no provision whatever in section 1582 of the Code touching the right of appeal, and hence nothing to which we can apply the liberal implication indulged by the court in that case in favor of the constitutionality of the statute there considered. Under the statutes considered in *Woodward Iron Co. v. Cabaniss,* (Code, 1886, §§ 3207, *et seq.,* as amended by Acts 1888–89, p. 112,) a trial is had before the judge of probate and a jury, a verdict is rendered under the charge of the court, and *a judgment of condemnation is entered by the court* upon the verdict. By section 3640 of the Code of 1886, it is provided that "an appeal lies to the Circuit or Supreme Court from any final judgment, order or decree of the judge of probate;" and the court held that this section, giving a general right of appeal, applied to the case, and that the Constitution was so far self-executing as to entitle the appellant to demand a trial by jury in the Circuit Court.

It is important to observe that the general statute relating to appeals from the Probate Court, above referred to, (Code, 3640,) only authorizes an appeal *from any final judg-*

*ment, order, or decree of the judge of probate.* Now, by the section we have under consideration, (Code, 1886, § 1582,) it is not required or contemplated that the judge of probate shall render any "final judgment, order, or decree." Nothing is required of him but to appoint three arbitrators on the application of the party who is the actor, and to record the written award of the arbitrators. The most latitudinarian principles of construction could not justify us in holding that either of these acts performed under the statute by the judge of probate is a final judgment, order, or decree, within the meaning of section 3640 of the Code. Nor have we been referred to, or able to discover, any other statute which supplies the ommission from section 1582 of all provision for the constitutional right of appeal.

This view of the case being conclusive of the invalidity of the statute, it is unnecessary to consider the third ground urged by appellant against its constitutionality, further than to say it is very questionable if the language in the statute, "must determine the terms and conditions upon which such crossing or intersection shall be made," necessarily imports a compensation in money, which is the only kind of compensation meant by the Constitution. Looking into the history of this section (Code, § 1582), we find it was originally part of an act entitled "An act to authorize the incorporation of railroad companies in this State," approved March 8, 1876 (Acts 1875-6, p. 249), being section fifteen of that act. The language there, so far as it is material to this inquiry, is : "They shall also have the right to cross and intersect any railroad in this State, and, in case the terms of said crossing or intersection can not be mutually agreed upon by the railroad companies in interest, the same shall be fixed and determined by a commission of award, as heretofore arranged for in this act." By preceding sections of the act, provision is made for the appointment of such commission of award, who are required to possess the qualifications of jurors, to act under oath, empowered to examine witnesses, and by unanimous verdict to assess the compensation to be made. There is also provision made for an appeal, which, as construed by this court, meant an appeal to the Circuit Court, where a jury could be demanded. The original act above referred to was carried into the Code of 1876, and constitutes article 11 of chapter 1 of that Code (Code, 1876 §§ 1821-1859), of which section 1842 was section 15 in the original act. In that section (1842) the language is the same as above quoted, down to and including the words, "by a commission of award," when the following words are used :

582      SUPREME COURT      [Nov. Term,

[M. & C. R. R. Co. v. B., S. & Tenn. River R'y Co.]

"as *hereinbefore provided;*" the preceding provisions being the same as in the original act, and which we have shown secured an assessment of compensation in money and an appeal affording a jury trial. Section 1842 of the Code of 1876 is carried forward into the Code of 1886 as sections 1581 and 1582 of the latter Code. Under the arrangement of this last-mentioned Code section 1582 is entirely dissociated from the original sections with which it stood related, and the qualifying reference therein, "as hereinbefore provided," is omitted from the section; and the Code of 1886, was adopted with these changes. The result is, the section (1582) as is now found in the Code of 1886 stands alone, as a distinct and separate statute embracing all the legislation of the State relating to the crossing and intersecting of one railroad by another.

The condemnation proceedings provided by sections 3207, *et sequitur*, of the present Code have no application to the proceedings contemplated by section 1582, for the reason that there is no provision in the latter section or elsewhere making them applicable, and the rule is that the general statutes regulating the taking of private property for public use do not confer the right to so take or subject the property or franchises of a corporation. In *Anniston & Cin. R. R. Co. v. Jacksonville, G. & A. R. R. Co.* 82 Ala. 297, it is said : "Lands once taken for a public use, pursuant to law, under the right of eminent domain, can not, under general laws, and without special authority from the legislature, be appropriated by proceedings *in invitum* to a different public use. . . . . . . . It would require an express act of legislation to accomplish it, and then only on the payment damages."

By reason, therefore, of the dissociation, by the arrangement of the present Code, of this section from the original sections with which it was enacted, and related by express reference therein, and the omission of the express words of reference and the failure to supply the place of the same with other appropriate words of reference to the other sections of the original act as they are now contained in the Code, and the adoption of the Code, in that shape, the invalidity of the statute (1582) inevitably results.

If the conflict between the statute and Constitution were not clear, it would be our duty to uphold it, and we would lean in favor of any reasonable construction, "although it might not at first view seem most obvious and natural," which would effectuate the legislative intent and make the statute conform to the Constitution. But we are constrained,

[McCulley v. Cunningham.]

for the reasons given, to hold that section 1582 of the Code is not a valid, constitutional enactment.

It results that the judgment of the Circuit Court dismissing appellant's petition was erroneous, and it is accordingly reversed.

Judgment will be here rendered quashing the proceedings before the probate judge of Colbert county as prayed in the petition.

Reversed and rendered.

WALKER, J., not sitting.