POSTAL TELEGRAPH–CABLE CO. OF WASH. v. NORTHERN PAC. RY. CO.

(Circuit Court of Appeals, Ninth Circuit. March 9, 1914.)

No. 2268.

1. EMINENT DOMAIN (§ 200*)—PROCEEDINGS TO ASSESS COMPENSATION—BURDEN OF PROOF.

Under the law of Washington, the petitioner in a condemnation suit has the burden of showing the reasonable value of the easement sought to be appropriated and the damages or absence of damage to the remainder of the property.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 540; Dec. Dig. § 200.*]

2. EMINENT DOMAIN (§ 195*)—PROCEEDINGS TO ASSESS COMPENSATION—PLEADINGS.

Under the law of Washington, the defendant in a condemnation suit need not file an answer, but may show the value of the land taken and the damages which he will sustain, without pleading the facts on which he relies.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 524; Dec. Dig. § 195.*]

3. TRIAL (§ 63*)—ORDER OF PROOF—REBUTTAL—PROCEEDINGS TO ASSESS COMPENSATION.

Where, in a proceeding to condemn an easement for a telegraph line along a railroad right of way, petitioner's witnesses who testified as to defendant's damages were cross-examined as to the additional expense in clearing the right of way of brush necessitated by such line, thus advising the petitioner of the nature of defendant's claim for damages, the court did not abuse its discretion in refusing to permit the petitioner to introduce evidence in rebuttal on this question, as, under the law of Washington placing the burden on petitioner to prove the damages, this was a part of its case in chief.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 151–153; Dec. Dig. § 68.*]

4. TRIAL (§ 67*)—ORDER OF PROOF—REBUTTAL.

Neither party after he has rested can, as a matter of right, introduce further testimony which may properly be considered testimony in chief, and whether he will be permitted to do so is in the sound discretion of the court.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 157; Dec. Dig. § 67.*]

5. EMINENT DOMAIN (§ 222*)—PROCEEDINGS TO ASSESS COMPENSATION—INSTRUCTIONS.

In a proceeding to condemn an easement for a telegraph line along a railroad right of way, where defendant introduced evidence to show that the expense of keeping the right of way free from brush, grass, etc., would be increased by such line, and there was undisputed evidence that brush would grow from six to ten feet in a single season, and that it was necessary to clear it upon portions of the right of way every year, an instruction that the statutes of the state imposed no duty on the company to cut or burn brush on the right of way, or keep it free from grass, brush, etc., was properly refused, as it was entirely immaterial whether there was such a statutory requirement; the necessity arising from the nature of the situation, and it being undisputed that, irrespective of the statute, the company was required to keep the right of way clear of brush.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 562–567; Dec. Dig. § 222.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. EMINENT DOMAIN (§ 222*)—PROCEEDINGS TO ASSESS COMPENSATION—IN-
STRUCTIONS.

In a proceeding to condemn an easement for a telegraph line along
a railroad right of way, where an instruction, that the law required the
railroad company to use reasonable diligence in keeping its right of way
free from inflammable material, and that if it failed to do so and damages
resulted therefrom it was liable, that if it was necessary or desirable to
prevent fires in the operation of trains or for any other necessary or ap-
propriate railroad use or purpose the expense thereof was chargeable to
the petitioner if the necessary expense would in any material or substan-
tial degree be increased by reason of the telegraph line, which additional
expense might be considered in arriving at the verdict, was not excepted
to, but was accepted as correctly stating the law, the refusal of an in-
struction that the statutes of the state imposed no duty on the company
to cut or burn brush on the right of way or keep it free from grass, brush,
etc., was not error.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 562–
567; Dec. Dig. § 222.*]

7. EMINENT DOMAIN (§ 111*)—COMPENSATION—ELEMENTS.

If the necessary expense of keeping a railroad right of way free from
inflammable material to prevent fires or for any other necessary or ap-
propriate railroad use or purpose would in any material or substantial
degree be increased by a telegraph line on such right of way, such addi-
tional expense was a proper element of compensation for the use of the
right of way by the telegraph company.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 294,
298; Dec. Dig. § 111.*]

8. EMINENT DOMAIN (§ 222*)—PROCEEDINGS TO ASSESS COMPENSATION—IN-
STRUCTIONS.

In a proceeding to condemn an easement for a telegraph line along a
railroad right of way in which the railroad company introduced evidence
to show that the expense of keeping the right of way free from brush
would be increased by such telegraph line, an instruction, that the rail-
road company owed the telegraph company no duty to cut or remove
such brush immediately surrounding the poles unless necessary for the
safe and proper operation of trains or to prevent the spread of fires, was
properly refused; the question being whether the presence of such line
would add to the burden of keeping the right of way free from brush, and
not whether there was any duty owing the telegraph company to keep it
free from brush.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 562–
567; Dec. Dig. § 222.*]

Ross, Circuit Judge, dissenting.

In Error to the District Court of the United States for the North-
ern Division of the Western District of Washington; Clinton W.
Howard, Judge.

Condemnation proceeding by the Postal Telegraph-Cable Company
of Washington against the Northern Pacific Railway Company. To
review the judgment, the petitioner brings error. Affirmed.

The plaintiff in error was the petitioner in the court below in condemnation
proceedings to establish its right to locate, maintain, and operate a telegraph
line upon and along the right of way of the defendant in error, under the
authority of the statutes of Washington, which gives to telegraph companies
the right of eminent domain and require railroad companies to allow tele-
graph and telephone companies to construct and maintain telegraph lines on
and along their rights of way. In the petition it was alleged that the poles
and wires would be so constructed and maintained as not to interfere with the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ordinary use or travel of the railroad company, and the prayer of the petition was that a jury be impaneled to ascertain and determine the compensation to be paid to the defendant, irrespective of any benefit to be derived by it from the said telegraph line. Upon the evidence submitted before the jury a verdict was returned for the defendant in the sum of $15,000. Thereupon judgment was entered.

Hughes, McMicken, Dovell & Ramsey, of Seattle, Wash., for plaintiff in error.

C. H. Winders, of Seattle, Wash., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1-4] Error is assigned to the ruling of the trial court in excluding certain testimony offered in rebuttal by the plaintiff in error. The testimony was excluded on the ground that it was part of the petitioner's case in chief, and not proper rebuttal testimony. It is not disputed that the law of Washington places upon the petitioner in a condemnation suit, such as this, the burden of showing the reasonable value of the easement sought to be appropriated, and the damage or absence of damage to the remainder so as to present the evidence of the compensation that should be paid to the defendant. The law of that state does not require the defendant in such a suit to file an answer, and he may show the value of the land taken and the damages he will sustain without having presented in any pleading the facts on which he relies. State ex rel. Ami Co. v. Superior Court, 42 Wash. 675, 85 Pac. 669; Tacoma v. Wetherby, 57 Wash. 295, 106 Pac. 903. In pursuance of that law, the defendant herein filed no answer to the petition. Assuming the burden thus imposed upon it by the statute, the plaintiff in error called witnesses to answer the question:

"What damage or diminution in the value of the use of this right of way by this railway company, or its successors in interest, in the use and operation of the right of way for any railway purpose, would be occasioned or is occasioned by the appropriation of the right to construct and maintain a telegraph line as proposed in this petition?"

The witnesses answered that the damages would be merely nominal. The two principal witnesses were cross-examined by the defendant in error, and were interrogated as to the additional expense which the telegraph poles and line would add to the expense of clearing the right of way of the railroad company of brush. One of them testified that he could not answer as he had not taken into consideration the question of such added expense. The other testified on cross-examination that the presence of telegraph poles would not add any appreciable amount to the expense of keeping the right of way clear of brush. By the cross-examination of these witnesses the plaintiff in error was distinctly advised of the nature of the defendant's claim for damage; as much so as if there had been an answer setting up such elements of damage to the right of way. The plaintiff in error had the opportunity then to offer testimony in chief to show, if it could, that the presence of the telegraph poles on the right of way and the wires attached thereto would not add to the expense of keeping the right of way clear of brush, and such testimony was a part of its case in chief and was as

available to it then as it was after the defendant in error rested. The plaintiff in error was not taken by surprise, therefore, when the defendant in error offered testimony tending to prove that the presence of poles and wires on the right of way appreciably enhanced the cost of clearing and keeping clear the right of way. When, after the defendant in error had closed its testimony and rested, the plaintiff in error again approached the subject of the expense of clearing the right of way of brush, it was offering evidence which should have been offered in chief, and there was no abuse of discretion in the ruling of the court that the evidence so offered was part of the case of the plaintiff in error in the first instance, and was not proper rebuttal. The rule is thus expressed in 38 Cyc. 1356:

"After he has rested, neither party can, as a matter of right, introduce any further testimony which may properly be considered testimony in chief. The strict rule is that he must try his case out when he commences, and cannot divide his evidence and give part in chief and part in rebuttal. Any relaxation of this rule is but an appeal to the sound discretion of the court."

See, also, Marande v. Texas & P. Ry., 124 Fed. 42, 46, 59 C. C. A. 562; Mitchell v. City of Boston, 215 Mass. 150, 102 N. E. 127; Stewart v. Smith, 111 Ind. 526, 13 N. E. 48.

[5-7] Was there error in giving or refusing instructions? The whole case before the court and jury resolved itself into the inquiry: How much injury would the railroad company sustain, if any, by reason of the presence upon its right of way of the proposed telegraph poles and wires? It is said that the court erred in refusing to instruct the jury that the statutes of the state of Washington do not impose any express duty upon a railroad company to cut or burn the brush growing upon its right of way, or to keep the same free from grass, weeds, brush, or trees. It was not error to refuse that instruction and this for two reasons, either of which is sufficient. In the first place, it was entirely immaterial whether or not there was such a statutory requirement. It was not disputed that irrespective of any such statute the railroad company was required to keep its right of way clear of brush. It was shown by the undisputed testimony that on the right of way of the defendant in error brush will grow from six to ten feet in a single season, and that upon portions thereof it was necessary to clear the brush every year. The testimony presented to show such necessity was pertinent to the issues and was received without objection. The necessity was one not created by statute, but by the very nature of the situation. In the second place, it was not error to refuse such instruction for the reason that the plaintiff in error took no exception to the charge in which the court instructed the jury as follows:

"You are instructed that the law requires a railway company to use reasonable diligence in keeping its right of way cleared from inflammable material, and that, where it fails to do so and damage results therefrom, the railway company is liable; and if you should find from the evidence that it is necessary or desirable for the railway company, in order to prevent the setting out and spreading of fires, in the operation of its trains, or for any other necessary or appropriate railway use or purpose, the expense thereof should be chargeable to the petitioner here in this proceeding; provided, however, that the necessary expense thereof would in any material or substantial de-

gree be increased by reason of the construction and maintenance of the proposed telegraph line upon said right of way, such additional expense, if any, may be considered by you in arriving at your verdict."

This instruction was accepted as correctly stating the law applicable to the issues. It expressed the law of Washington as it is found in the opinion of the court in Fireman's Fund Ins. Co. v. Northern Pacific Ry., 46 Wash. 635, 91 Pac. 13.

[8] Nor was there error in the refusal of the court to instruct the jury, as requested by the plaintiff in error, that the railway company would owe no duty to the telegraph company to cut or remove such brush or undergrowth immediately surrounding the poles of the latter company unless the jury believed from the evidence that the cutting of such brush or undergrowth would be necessary for the safe and proper operation of the railway trains and business or to prevent the spread of fires. There was nothing in the evidence to which this requested instruction was applicable. No question was, or could have been, at any time presented of any duty of the railway company to the telegraph company to cut or remove brush, and to have given the requested instruction would have been to divert the attention of the jury from the real question in issue. It may be conceded, as argued, that the obligation imposed upon a railroad company to keep its right of way free of brush or other material likely to cause damage by fire is not to be taxed against one who in no way adds to that burden, but that proposition was wholly aside from the issues and the evidence in the case. But a single question was presented for decision, and that was whether the presence of the telegraph poles and wires would add to the burden of the duty imposed upon the railroad company. If it did add to that burden, clearly it was proper that the expense of bearing the added burden should be assessed against the telegraph company, which for its own benefit caused it. It was to the question of this added burden that all the testimony was directed, and it was because the jury found there was such an added burden that they returned their verdict against the petitioner. The instructions of the court to the jury clearly and properly presented the single issue which was involved, and the attention of the jury was confined to the consideration of the additional expense, if any, which the railroad company would incur in clearing its right of way of brush by reason of the presence of the telegraph poles and lines upon its right of way; and the jury were, in substance, instructed to consider the obligation to clear that right of way as one resting upon the railroad company for its own benefit, and not for the benefit of any other person or corporation.

We find no error.

The judgment is affirmed.

ROSS, Circuit Judge (dissenting). The defendant in error being the owner of a right of way between the city of Seattle and Sumas in the state of Washington, a distance of about 120 miles, over which it operates its line of railway, the plaintiff in error commenced this proceeding in the court below to condemn a right on and over the railway

right of way upon which to maintain and operate a telegraph line, which it was authorized to do by virtue of the laws of that state.

In its petition for such condemnation the telegraph company alleged, among other things:

That its line "will at all times hereafter be constructed and reconstructed of the best material and by the most approved methods of construction, and will consist of a single line of poles not less than 20 nor more than 30 feet in length, including length underground except at highways or where obstructions exist, where the poles will be of such a height as may be required by statute, or necessary because of physical conditions existing, or to protect other wires or structures rightfully upon the said right of way. That the poles will be about 10 inches in diameter at the base, planted from 4 to 8 feet in the ground, according to the length of the poles, and in such positions upon said right of way as safe and proper construction permit; the poles to be placed upon that portion of said right of way between a line 5 feet from the outer edge thereof and a line 25 feet from the center of the main track, except where the right of way may be less than 60 feet in width, or where the location of the main track upon the right of way, or the location of buildings, tracks, or other improvements or obstructions upon the right of way may make it impossible to place the poles upon that portion of the right of way above described, in which event the poles will be placed upon the most practicable remaining portion of the right of way consistent with the safe and proper construction of said telegraph line, such portion of said right of way to be designated by said railway company or its lessees, so as not to interfere with the ordinary travel or use of said railroad. That the poles will be set about 165 feet apart, making a total of 32 to 35 poles to the mile, excepting at sharp angles, where they may be not less than 75 feet apart, and around curves, where they may be from 117 to 131 feet apart; the poles to be equipped with cross-arms about 10 feet long, at or near the top of the poles, fastened at about the middle of the cross-arms to the poles, and along and upon said cross-arms or poles, or upon said cross-arms and poles, will be strung a sufficient number of wires to transact such business as will be given to the telegraph company by the United States government and the public. That said line of poles and wires will be so constructed, maintained, and operated as not to interfere with the ordinary travel or use of said railroad.

"This petitioner further avers that the only lands that will be actually taken or occupied by it by virtue of this proceeding will be about one square foot for each pole; that the space between the poles and under the wires can be used by said railway company or its lessees for all purposes for which it has heretofore been used; that wherever it becomes necessary for said telegraph line to cross said right of way the said crossing will be made by having its poles at such crossing so erected and its wires so insulated and strung so high above said railroad track as to prevent any injury to or interference with the employés or property of the said railway company. And this petitioner further stipulates that its said telegraph line will not interfere with any other telegraph or telephone line now rightfully upon said right of way; that if at any time the said railway company, its successors or lessees, shall require for railroad purposes the immediate use of any of the land occupied by said telegraph line, then and in that event, upon reasonable notice in writing, this petitioner will, at its own expense, remove its line to some other place, to be designated by said railway company, adjacent thereto, on said right of way, so as not to interfere with the use of said right of way for railroad purposes; that said telegraph line will not be erected on any embankment or slope or any cut of said right of way, without the consent of said railway company, and, if at any time said railway company or its lessees shall require its entire right of way for railroad purposes at any point, the telegraph company will at such point or points remove its line entirely off said right of way."

The question as to what the telegraph company should be required to pay the railway company for the right thus sought came on for trial in the court below before a jury, resulting in a verdict in favor

of the railway company for $15,000, upon which verdict a judgment was entered giving the telegraph company the right sought upon the payment to the railway company of that sum, with costs. The case is brought here by the petitioning company by writ of error.

It shows that when the proceeding was instituted the railway company had an exclusive right to use the strip of land constituting its right of way for railroad purposes. To the extent that that exclusive right of enjoyment for railroad purposes was diminished in value by subjecting its right of way to that sought by the telegraph company, and the extent to which the establishment and maintenance of the telegraph line on the railway right of way might be properly said to add to the railway company's burdens, were the only questions to be determined by the jury.

In the state of Washington, where this case arose, it is the established rule that he who seeks condemnation of another's property must affirmatively show the reasonable value of the thing sought to be taken. Bellingham Bay, etc., R. Co. v. Strand, 4 Wash. 311, 30 Pac. 144. In assuming that burden the petitioner below introduced witnesses who testified to the effect that the value of the railway company's right of way for railroad purposes would not be diminished by the additional servitude to be created by the construction and maintenance of the proposed telegraph line, under the stipulations of the petition. The defendant to the proceeding introduced testimony to the effect that the construction and maintenance of such telegraph line on the railway company's right of way would impose upon the latter company an additional annual expense in cutting, piling, and burning the undergrowth thereon; its engineer of maintenance, Perkins, testifying among other things, as follows:

"The added expense has not been made an exact matter of record by bookkeeping, but I would estimate from my general knowledge of the line in question, and of the nature of it, that the specific and general items that add to the cost of the maintenance on that line by reason of the presence of a pole line would make an annual amount of about $15 per mile. Q. Explain to the court and jury how you arrive at that figure. A. I am taking into consideration the added cost of clearing the right of way from brush; the added cost by reason of the particular items of clearing and pulling the brush and inflammable material away from poles, to protect them from destruction by fire; the added cost by reason of the presence of poles between and adjacent to tracks, in the way of acting as obstructions to the handling of ties and tie renewal; the added cost by reason of the protection and care that is needed in the burning of old ties, and needed in order to protect the poles from fire and to protect the wire lines from damage; the added cost by reason of delays that occur in connection with construction, in waiting for poles to be moved; and the actual loss of the use of a certain amount of team track capacity by reason of poles being located beside team tracks and thereby preventing the use of a certain part of the team track, which is worth a certain amount of money to us, and to some extent the added risk by reason of poles being in close proximity to tracks and endangering the employés and others in connection with the operation of trains."

And its witnesses F. M. Smith and W. H. Gale testifying, among other things, as follows:

F. M. Smith:

"Well, it would increase the cost of maintenance in several ways. Places where our right of way is narrow, it would doubtless increase the cost of

burning the old ties; that is, moving them to a place where sufficient clearance could be obtained from the wires so that we could burn them without injuring the wires and also in unloading our ties or piling them up; and in places where the brush is rather heavy in the cutting of the brush, we would have to pile the brush back from the poles and from under the wires so that when the slashing was burned it would not destroy the poles and the wires, and we have at various times when we do this burning to station men along to watch the burning so that the poles would not catch and burn up. And this labor represents dollars and cents and probably would increase the cost of maintenance considerably. In some certain sections in this burning and slashing probably it would increase the cost from $12 to $15 per mile, and in the handling of our ties for burning narrow strips of right of way such as we have from Fremont to Bothel it would run into considerable money in a year, depending on the number of ties we put in. It would increase the cost probably one or two cents a tie for the handling. I have figures showing about one cent for the extra handling on account of finding a proper place to burn them."

### W. H. Gale:

"We have right of way on a part of our track that we have no poles on, and if we go once a year and cut that brush we can cut it irrespective of where it falls. We can let it fall anywhere except next to the fences. When the men are cutting brush they let it fall away from the fence. We do not make any pretense of piling the brush to burn it because it dries out better, and after we come to burn it we can get a better burn, because it burns every weed on that right of way. It is our desire always, when we burn it—it not only helps to burn the brush, but it sets it back by burning the roots, and where you have a line of poles you have to protect those poles by cutting around the poles and throwing the stuff back a sufficient distance to save the poles. We have always done it. That has been the practice, and it is quite an item when you come to clear a right of way to clear away and keep it away and save the poles while you are burning it. Q. About how much a mile, Mr. Gale? * * * A. I would say at least $10 or $12 per mile, easily, for the difference in pulling away the brush. There have been a great many of the telegraph company's poles on fire at one time or another. The matter of extinguishing the fires requires labor. I never knew the telegraph company to furnish men to watch the poles or pull back the brush when they are burning, or to clear any of the right of way except to chop down a few of the tops which might be reaching up to the lower wires. We have to cut it off again just the same and it takes more work to do it."

The plaintiff in error sought to rebut this testimony of the railway company by several witnesses, but the trial court rejected the offer upon the ground that the testimony should have been given in chief, to which ruling the plaintiff in error reserved an exception.

No such cause of damage appears to have been pleaded by the railway company; indeed, it has been held that the clearing of such a right of way and the burning or other disposition of the brush and other obstructions thereon is not to be considered in assessing such damages for the reason that such expense is incurred, not as a result of the construction of the line of telegraph, but because necessary to the railway company in the safe conduct of its own business. Atlantic Coast Line R. Co. v. Postal Telegraph-Cable Co., 120 Ga. 268, 48 S. E. 19; 1 Ann. Cas. 734. However that may be, I am of the opinion that the plaintiff in error was entitled to rebut the evidence given by the railway company upon the subject.

The state of Washington has this statute:

"Every one clearing right of way for railroad, wagonroad or other road, shall pile and burn on such right of way all refuse timber, slashings, choppings

and brush cut thereon, as rapidly as the clearing or cutting progresses, and the weather conditions permit, or at such other times as the forester, or any of his assistants, or any warden, may direct, and before doing so, shall obtain a permit." Sessions Laws 1911, p. 634.

As will be observed, this statute does not expressly require a railroad company to keep its right of way free of brush and other like obstructions, and the plaintiff in error requested the trial court in this case to instruct the jury as follows:

"You are further instructed that the statutes of the state of Washington do not impose any express duty upon the defendant railway company to cut or burn the brush growing on its right of way, nor to keep the same free from grass, weeds, brush, or trees; neither does it impose any such express duty upon the telegraph company. If, however, the defendant railway company does clear its right of way of timber, slashings, choppings, and brush, then it is made its duty under the laws of this state, as rapidly as the clearing or cutting progresses and the weather conditions permit or at such times as the forester or any of his assistants, or any fire warden, may direct, to obtain a permit and to pile and burn the same on such right of way."

The court refused to give this instruction, to which exception was taken by the plaintiff in error, and gave to the jury, among others, the following:

"The law requires a railway company to use reasonable diligence in keeping its right of way clear from inflammable material, and that where it fails to do so and damage results therefrom, the railway company is liable"—to which latter instruction the plaintiff in error also excepted.

The direct effect of the refusal of the request of the petitioner for the above instruction respecting the clearing of the right of way, and the giving of the last one above quoted, was to tell the jury that the cost to the railway company of keeping its right of way free of such material was properly chargeable as damages against the petitioner for the right of way sought by it, regardless of whether such clearing would or would not be made necessary or proper by the construction and maintenance of the telegraph line, and to what extent, if at all. And this was emphasized by the refusal of the court (to which refusal the petitioner also excepted) to give this requested instruction:

"You are further instructed that, if you believe from the evidence that the clearing of brush and other undergrowth immediately surrounding the poles of the telegraph company would require additional time and expense, then the defendant railway company will owe no duty to the telegraph company to cut or remove such brush and undergrowth, and it need not incur such additional expense unless you believe from the evidence that the cutting of such brush or undergrowth immediately around said telegraph poles would be necessary for the safe and proper operation of defendant's railway trains and business or to prevent the spread of fires from the said railway across its right of way to adjoining land."

Certainly the duty imposed by law upon a railroad company to keep its right of way free of brush or other material likely to cause damage is not to be taxed against any other party who in no way adds to the burden, but is imposed upon the company owning the right of way, as a duty owing to the public and for the protection of those injured by its neglect. Chicago, Burlington, etc., R. Co. v. Chicago, 166 U. S. 226, 254, 17 Sup. Ct. 581, 41 L. Ed. 979, and authorities there cited.

I am of the opinion that the plaintiff in error was clearly entitled to show, if it could, that the construction and maintenance of its telegraph line on the right of way of the railway company would not add to any burden imposed by law upon the latter company·to keep its right of way free of brush and other like obstructions, or, if at all, to what extent. Chicago, etc., R. Co. v. Phelps, 125 Ill. 482, 17 N. E. 771; Hartshorn v. Illinois, etc., Ry. Co., 216 Ill. 392, 75 N. E. 122.

From what has been said, I think the judgment should be reversed, and the cause remanded to the court below for a new trial, and therefore dissent from that given here.