[No. 29826. Department Two. August 8, 1946.]

THE STATE OF WASHINGTON, *Appellant*, v. GEORGE H. SMITH *et al., Respondents.*[1]

[1]Reported in 171 P. (2d) 853.

*The Attorney General, Harold A. Pebbles* and *Russell M. Lindel, Assistants,* for appellant.

*Lester Huntington* and *Ronald Moore,* for respondents.

MILLARD, J.—The state of Washington, as petitioner, instituted this action in eminent domain to appropriate a right of way for primary state highway No. 1 (Pacific highway), across certain lands located in Cowlitz county belonging to defendants. About six months after entry of the preliminary order adjudicating public use, the cause was tried to a jury on the question of the amount of compensation to be awarded defendants for the taking of their property.

Two parcels of land are involved in this action: Parcel 1, which is rectangular, contains 3.86 acres, and lies generally northerly and southerly across the rear of defendants' property. Parcel 2, which is also rectangular in shape and contains 1.73 acres, lies generally northerly and southerly across tax lot 4 belonging to one Larson. This second parcel of land, which lies southerly of and is detached from parcel 1, was owned by Larson, from whom the state purchased it prior to the trial of this action.

A water tank or reservoir was constructed in 1903 by defendant George H. Smith and his cousin upon parcel 2. Since 1905, the owners of tax lot 4 (where the reservoir is

now and has always been located), the owners of the adjoining property to the north, and defendants, as owners of tax lot 5, which contains the right of way being taken by the state, were served by and took water from the reservoir. Defendants have had an easement for many years to pipe water to their property from the reservoir on tax lot 4 across a tract of land owned by one Morton E. Smith. Defendants have, also, a prescriptive right with other parties interested to take water from the spring or creek source approximately 2,850 feet to the east and up the hill from the point where the reservoir is located.

The court refused to permit the state to formally stipulate or offer evidence that, at the time of construction of the contemplated highway, the state entered into an agreement with all parties, except defendants, interested in the water reservoir that it would construct a reservoir of the same standard, size, and grade, immediately to the east of the highway right of way, reconnect all water outlets, and install water pipes from the tank under the highway to a point where good connections could be made with the water pipes of the various users, including defendants.

Defendant Smith testified that damage to the remainder of his property not taken would be based upon his cost of reconstruction of exactly the same water system, including the installation of pipes from the source of water to his house and including the reconstruction of a separate tank or reservoir for himself. The reservoir was to be located one hundred feet east of the site where the state intended to construct a new reservoir. It was defendants' purpose to construct a reservoir on a tract of land they acquired subsequent to commencement of this action.

One of the state's witnesses estimated damages of five hundred dollars—cost of reconstruction of another reservoir by defendants—to defendants. Evidence adduced by defendants was that the proposed construction of the highway would necessitate complete destruction of the reservoir on parcel 2 and the building of a new reservoir in another location for which defendants had secured an easement without expense. It was necessary to run a pipe line to the creek

and establish a weir for the purpose of allowing any one who might have a right in the water of the creek from which the water was piped to the reservoir to also obtain water, as it was impossible to apportion the water except at the source. The cost of this new construction was estimated at $2,820.30. It was not feasible to sink a well on the property of defendants not taken by the state, as the water available was unfit for domestic purposes.

On request of the state, the court submitted to the jury a special interrogatory that, if in its verdict (the jury found for defendants in the amount of $4,150), the jury included any damages resulting from the loss, if any, of defendants' water system, the jury state the amount of such damages. The jury's answer to that interrogatory was "$2,000." From judgment for $4,150 entered in favor of defendants, the state has appealed.

The trial court refused to permit appellant to stipulate or offer evidence that it would reconstruct the reservoir so that water at the same relative location would be available for respondents. That refusal is assigned as error.

The question presented is as follows:

In an eminent domain proceeding, where the state is taking land for a public highway the construction of which will destroy a water reservoir and deprive the condemnee of the use of the land upon which the reservoir is situated, may the condemnor formally stipulate or offer evidence that it will construct a new reservoir on another piece of land in which the condemnee has no interest but will be given the right to take water therefrom?

Appellant is taking all of respondents' rights in the present reservoir and the land upon which that reservoir is situated. Neither the owner of the land upon which the reservoir is situated nor respondents, who have an easement over that land and right to use of water from the reservoir, have any rights left in the land for the purpose for which it was used—reservoir site. After destruction of the reservoir and taking of the land for highway purposes, appellant intends to build a new reservoir on a different parcel of land, in which respondents have no rights, and present to re-

spondents a right to use of water from that reservoir in lieu of respondents' present rights.

This the state may not do on the theory that it is appropriating only a portion of respondents' interest and reserving to them some interest in the property appropriated. Clearly, when the state takes the land for the proposed highway, it destroys every interest of respondents in the reservoir or the land upon which the reservoir is situated. The state is destroying a structure—the reservoir—belonging to respondents and is also appropriating respondents' interest in the land upon which the structure is situated, and is attempting to give to respondents in lieu thereof a new right in another piece of land and a new reservoir on a different piece of land.

The rule is well established that a condemnee cannot be compelled to accept an offer by the condemnor to allow the former certain rights and privileges or to do some act in his favor in payment or reduction of compensation. The damages occasioned to the condemnee by the taking are estimated as of the time of the taking. Where there is no agreement between the parties—there was none in the case at bar—the condemnor must take the rights which he seeks to appropriate absolutely and unconditionally, and he must make full compensation for what he takes. *State ex rel. Polson Logging Co. v. Superior Court,* 11 Wn. (2d) 545, 119 P. (2d) 694.

Appellant takes the reservoir in its entirety and appropriates all of respondents' rights in and to the land upon which the reservoir is situated, and there is no limitation of any kind in this appropriation. The constitution, Art. I, § 16, provides that no private property shall be taken or damaged for public use without just compensation being paid to the owner of such property. While our constitution does not prescribe the medium by which compensation shall be paid, it is a well-established rule that the compensation must be in money.

"The owner cannot be compelled to accept other lands as compensation, even if they are equally valuable. . . . If a definite taking has been actually made, or the relations of

the parties are irrevocably fixed by the petition and the adjudication of the right to condemn, the condemning party cannot mitigate the damages by offering to stipulate to use the property to a less extent than the easement taken would justify, or to grant back certain rights or easements in the property as a partial compensation, or to build something for the owner to replace a convenience that he has lost." 1 Nichols on Eminent Domain (2d ed.) 625, § 205.

"Just compensation for property taken for public use means compensation in money; . . . it would make no difference how valuable the property that was contemplated as a substitute is, it could not be substituted in lieu of money, against the wishes of the condemnee." *Shurtleff v. Salt Lake City,* 96 Utah 21, 82 P. (2d) 561, 565.

In the case cited, the condemnor endeavored to compel the condemnee to accept other water rights than the rights he had in lieu of compensation in money, which, on principle, is no different from the case at bar. All of the rights respondents had in the reservoir and the land upon which the reservoir was situated were subject to condemnation, and all of those rights are being taken from respondents by appellant reserving nothing to respondents.

■ Appellant correctly criticizes some of the instructions; however, all of the instructions must be considered as a whole, and, so considered, we cannot say that prejudicial error was committed by the court in charging the jury.

The evidence amply supports the verdict.

We refrain from a review of all of the authorities cited, as same are either consistent with the foregoing opinion or are distinguishable from the case at bar.

The judgment is affirmed.

BEALS, C. J., BLAKE, ROBINSON, and JEFFERS, JJ., concur.