[No. 31877. *En Banc.* January 9, 1953.]

THE STATE OF WASHINGTON, *Respondent,* v. H. E. WARD *et al., Appellants.*[1]

[1] Reported in 252 P. (2d) 279.

*Gus Thacker* and *Ronald Moore*, for appellants.

*The Attorney General* and *Paul Sinnitt, Assistant,* for respondent.

MALLERY, J.—This is a condemnation proceeding to acquire a right of way in Lewis county, near Centralia, for a limited access highway known as primary state highway No. 1.

The appellants own a farm through which the right of way will run. The state will acquire 5-2/10 acres, which will leave all of appellants' farm buildings on a small tract of 5-1/10 acres on the easterly side of the proposed highway. Thirty-nine and five tenths acres of the farm will lie to the west of it.

The plan of the proposed limited access highway includes a service road along the westerly edge of the right of way for use of the appellants in common with all other landowners on that side. The property to the east is served at present by a road which will continue to be available.

The appellants' land to the west is low and has no suitable building sites. The highway plan does not include an underpass. The distance from appellants' property on the west side of the highway to the part on the east of it will be 7,120 feet by the closest available route. This will, of course, have a considerable effect upon the feasibility of operating the farm as a unit.

The state introduced in evidence its complete plan for constructing the highway through appellants' property. It produced competent expert testimony as to the value of appellants' farm as a unit in its present condition. It also produced evidence of the value of both parcels of property remaining after the construction of the highway with the service road as planned. The aggregate value, after the construction of the highway, was found by the jury to be

fourteen thousand dollars less than its existing value. Appellants appeal from a judgment in that amount.

■ The amount of the judgment to be paid by the state to a landowner in a condemnation case is prescribed by RCW 8.04.080 [cf. Rem. Rev. Stat., § 894] as:

" . . . compensation . . . for the taking . . . thereof, together with the injury, if any, . . . to the remainder of the lands, . . . after offsetting against . . . such compensation and damages the special benefits . . . accruing to such remainder by reason of . . . the use by the state of the lands . . . ."

■ Not only is some of appellants' land taken, but their right of access to the highway from the remaining lands is also being condemned. Lack of access, of course, has a bearing upon the extent of the damage done to the remainder of the land, as well as upon the diminution of special benefits which ordinarily accrue to abutting land from the right to use the highway. The limited access feature of the highway must, therefore, be presented to the jury together with all other features of the proposed construction, such as service roads, to enable it to properly assess all the elements of damage and special benefit that will result therefrom.

■ Appellants contend that the trial court erred in admitting evidence of the plan of the service road to be built on the west edge of the proposed highway. They contend that they should be paid damages in money as if there was not going to be a service road. Their theory is that evidence of such a plan invites the jury to substitute the service road in place of a money payment for the severance damages to appellants' farm resulting from cutting it into two unconnected parcels. They rely upon *State v. Smith,* 25 Wn. (2d) 540, 171 P. (2d) 853, in which the state was not permitted to construct a water tank as a substitute for one destroyed, but was required to make restitution for the amount of the damages in cash.

There is no such question of substitution in the instant case. This is readily apparent when we realize that access

to the land on the west side of the highway was not over any highway or road. Indeed, the road which served the entire farm did not lead from the buildings to the land in question. Nor is it contended by the state that the service road will give access between the two parcels of appellants' property. It is, therefore, not a substitute for severance damages. Without the service road, however, the land in question would be landlocked and practically valueless. Thus, the service road avoids the damage which a lack of access would cause. This is mitigation, not substitution.

The amount of damage which the entire project will do to appellants' land on the west side of the highway depends upon whether or not there will be a service road. The plan for it was therefore admissible in evidence for the guidance of the jury.

The trial court committed no error in declining to give appellants' requested instructions. The substance of those which correctly stated the law was in fact given. Those requested for the purpose of injecting speculation about an underpass to connect the remaining parcels of land were properly refused. It is the exclusive prerogative of the state to determine the details of the plan for the highway. The damages suffered and to be paid for are those occasioned by the particular plan it adopts. It would have been error to have instructed the jury with regard to such hypothetical situations as exist only in appellants' minds.

The judgment is affirmed.

HILL, HAMLEY, DONWORTH, FINLEY, WEAVER, and OLSON, JJ., concur.

GRADY, J. (dissenting)—If we had before us only the questions discussed in the majority opinion, I would be able to concur in the result reached therein. The appellants moved for a new trial upon grounds which challenged the verdict and judgment from a constitutional standpoint and which presented the questions whether they had been denied due process of law and just compensation for the damage done to their stock and dairy farm by reason of the

construction of a limited access facility. The majority opinion does not decide such questions. Art. I, § 3, of the constitution provides that no person shall be deprived of his property without due process of law. Art. I, § 16, provides that no private property shall be taken or damaged for public or private use without just compensation being ascertained and paid.

In a condemnation suit to acquire a right of way for a public highway, the condemner has the burden of going forward and submitting to the jury evidence upon all of the factors and elements necessary to enable it to properly and understandingly ascertain the amount of "just compensation" due the landowner for the taking and damaging of his property. He is not required to file an answer, but may present evidence upon all of the issues tendered by the petitioner and any defenses he may have. Such a case is essentially different from one where a landowner seeks to recover damages against one who has taken or injured his property. In the former case, the landowner is not required to submit any proof as to the amount of compensation to which he is entitled, and the absence of such proof does not put him in the position of recovering only nominal damages as might be the case where he was suing for damages. In the condemnation suit, the petitioner is entitled to open and close, both in the presentation of proof and the argument to the jury. *Bellingham Bay & British Columbia R. Co. v. Strand*, 4 Wash. 311, 30 Pac. 144; *Seattle & Montana R. Co. v. Murphine*, 4 Wash. 448, 30 Pac. 720; *Seattle & Montana R. Co. v. Gilchrist*, 4 Wash. 509, 30 Pac. 738; *State ex rel. McPherson Bros. Co. v. Superior Court*, 108 Wash. 58, 182 Pac. 962; *Postal Telegraph-Cable Co. v. Northern Pac. R. Co.*, 211 Fed. 824.

The early Washington cases just cited pronounce rules of law and procedure from which no departure has been made by this court. The conclusion justifiably to be reached from the cited cases is that, if the condemner does not adequately furnish to the jury the necessary and proper data upon which it can ascertain and determine just compensa-

tion, the property owner is denied due process of law, particularly in its procedural aspects, and the mandate of the constitution requiring the ascertainment of just compensation is not met.

It seems to me that the record before us for review falls far short of demonstrating that the respondent met the constitutional requirements, and that such a conclusion necessarily follows when the situation disclosed thereby is portrayed.

The appellants own a tract of land located a short distance south of the city of Centralia, consisting of approximately fifty acres. The land abuts on a public highway on its east side, known as the airport road. It is bounded on the west by the Chehalis river. The river makes a curve to the east, serves as the southerly boundary for a considerable distance, and then makes a curve southerly. The property is a stock-raising and dairy farm. The buildings consist of a dwelling house, root house, machine shed and granary, poultry house, barn and milk house, the latter being lined and having a cement floor; also stock-loading chute and corral. The buildings, garden, shade and fruit trees are located in the northeasterly part of the tract.

The center line of the highway runs across the farm in a northwesterly direction, with a bearing of north 13 degrees and five minutes west. The right of way is three hundred feet in width, and its area is 5.2 acres. The remainder of the land east of the highway consists of 5.1 acres, and to the west thereof 39.7 acres. The state will construct a frontage road on the west side of the highway which will serve the 39-acre tract and connect with Mellen street in Centralia, which street crosses the main highway by an overpass.

After construction of the main highway, the appellants, in order to make use of their westerly tract of land, will be required to travel north over the airport road 2,150 feet to Alder street in Centralia; thence west on Alder street 870 feet to a service road on the east side of the main highway; thence north over the service road 720 feet to Mellen street; thence west on Mellen street 440 feet; thence southerly 950

feet to the tangent on the west service road; thence 1,990 feet to the north boundary of appellant's property, or a total of 7,120 feet.

The easterly line of the right of way passes through one end of the barn and the milk house adjacent thereto. The 39.7 acres on the west side of the right of way is bottom land, and at times is overflowed by the high water of the Chehalis river during flood seasons. The 10.3 acres of the farm, which includes the right of way and the part abutting on the airport road, is higher land.

The highway is a "limited access facility" as defined by RCW 47.52.010. Such highways are designed for through traffic. The owners or occupants of abutting land have no right of access thereto except at certain designated places.

In seeking to acquire a right of way for a limited access facility across a farm which is used and operated as such as a unit, quite a different situation is presented than in the case of an ordinary highway. In the latter case, the farmer may continue to use and operate his farm as a unit. He not only has access to the highway to use as such, but he may drive his stock across it, as well as transport his farm machinery and haul his produce across the right of way. But he cannot do any of these things if the highway is a limited access facility. His farm is divided into two parts.

When the highway is constructed, the appellants can no longer operate their farm as a stock-raising and dairy farm. The evidence makes it clear that the distance to drive livestock from the home tract to the tract on the west is not only too great, but it would be impracticable to drive such stock over the streets and highways. The stock would have to be transported by truck, and that would not be feasible.

The case was presented by the respondent upon the theory of ascertaining the value of the land taken and the damage to the remainder. But the idea that the farm unit as a stock-raising and dairy farm was destroyed because of the loss of access directly from one part of the land to the other was partially lost sight of and not adequately stressed. It was not made to appear that there would be a market for

the farm in the condition in which it would be left after the construction of the highway or either of the two separated tracts.

The just compensation for the part of the land that is being taken and the damage done to the remainder of the farm as a result of such taking must be determined by ascertaining the market value of the farm as it was at the time of the trial of the condemnation suit and what its market value, if any, will be after the limited access highway and service road are constructed. The entire fifty-acre tract must be considered as one farm unit; and while it would be proper to inquire as to the damage and benefits to each tract after severance, yet in arriving at its verdict the jury must consider the land as one farm tract and determine the damages and benefits upon that basis.

By "market value" is meant the price the farm would bring if offered for sale by one who desired but was not required to sell, and was sought by one who desired but was not required to buy, after due consideration of all the elements reasonably affecting value. The evidence submitted should be such as to enable the jury to determine the nature and character of the soil, the uses to which the farm could be put, the improvements thereon, the desirability of and demand for such property, both before and after the taking of the right of way, and all other factors which might properly enter into a sale between a willing buyer and a willing seller. Washington Constitution, Art. I. § 16 · (Amendment 9); *Sultan Water & Power Co. v. Weyerhaeuser Tbr. Co.,* 31 Wash. 558, 72 Pac. 114; *Idaho & Western R. Co. v. Coey,* 73 Wash. 291, 131 Pac. 810; *State v. Smith,* 25 Wn. (2d) 540, 171 P. (2d) 853; *In re Issaquah,* 31 Wn. (2d) 556, 197 P. (2d) 1018; *Washington Water Power Co. v. United States,* 135 F. (2d) 541. These are just a few of the many cases which might be cited illustrating and applying to various situations the foregoing rules and principles of law. The case of *Washington Water Power Co. v. United States,* 135 F. (2d) 541, contains suggestions with reference to methods whereby "market value" may be determined.

A very important factor in ascertaining the amount of damages is whether there is an available market for a farm after a limited access highway is constructed and severs it into two parts, the effect of which is to destroy it as a stock-raising and dairy farm by reason of loss of a practicable means of access from one part to the other.

With reference to the farm unit theory, what we said in *Idaho & Western R. Co. v. Coey*, 73 Wash. 291, 294, 131 Pac. 810, is quite appropriate:

"Appellants' farm, across which the right of way is to be constructed, consists of a full half section in one body. In estimating the damage to the land not taken it was proper to consider the entire tract of land as one farm, and to determine the damages upon the basis of how the construction of the railroad would affect the whole body of land as one farm. In other words, the jury should consider two farms, one without any railroad across it as it now exists, and the other with a railroad across it as it will exist when respondent's line is built and in operation. This is the rule where, as here, the whole farm is in one continuous tract and is used and farmed as one body of land . . .

" . . . While for convenience of witnesses or to enable the jury to obtain a better understanding of the situation, it might in some cases be proper to inquire as to the damage to each subdivision of the whole tract, yet in arriving at its verdict the jury must consider the land as one tract, and determine the damages upon the basis of one entire tract and not several tracts."

In its instructions to the jury upon the measure of damages, the court authorized a deduction of the amount of special benefits, if any, accruing to the remainder of the land not taken. Such deduction is proper where the state condemns property for the construction of a public highway. In many cases a tract of land is benefited and enhanced in value by having a public highway through it, but I am unable to find anything in the record indicating that the farm of appellants as a unit will be benefited by the construction of the proposed limited access highway. It was proper for respondent to show that it would construct the service road because the thirty-nine acre tract would suffer

a less damage if it was furnished with an outlet instead of being landlocked.

Witnesses called by respondent valued the farm in amounts varying from $21,000 to $31,445, and in response to direct questions fixed its value after the taking in amounts ranging from $10,000 to $21,185. Witnesses called by appellants placed valuations upon the farm of $45,000 to $70,000, but they did not give any direct testimony as to the value of the farm after the taking. They fixed values on the thirty-nine acre tract before and after the taking; also on the land taken and the 5.1 acre tract upon which the buildings were located.

The difficulty presented is that none of the testimony gave the jury a valuation of the property as a farm unit, having in mind that it could no longer be used as a stock and dairy farm after the taking. The witnesses called by respondent indicated they had in mind the inconvenience of farming the thirty-nine acre tract and the depreciation in its value by reason of the severance of it from the 5.1 acre tract. All of the witnesses seem to have indulged in the assumption that there would be a market for either the remainder of the land as a whole or as divided into two parts. In the absence of evidence of the existence of such a market, the values fixed would not establish any reliable criterion by which the jury could be guided.

In expressing my views in this dissent, I realize that they cannot affect the parties to this action, but I do so with the hope they may be given consideration in future cases where rights of way for limited access highways are sought, through farms particularly, the result of which is to substantially destroy and render useless the remaining property for farming or other purposes for which it is adapted.

The judgment should be reversed and the cause remanded for a new trial.

SCHWELLENBACH, C. J., concurs with GRADY, J.

---

February 20, 1953. Petition for rehearing denied.