[No. 348.   Decided June 24, 1892.]

THE SEATTLE & MONTANA RAILWAY COMPANY, *Appellant*, v. SAMUEL S. MURPHINE AND EMMA J. MURPHINE, *Respondents*.

CONDEMNATION PROCEEDINGS—BURDEN OF PROOF—DAMAGES—FENCING—
MARKET VALUE.

In a proceeding for the appropriation of land to the use of a railway corporation for right-of-way the railway corporation is entitled to the open and close in the introduction of evidence and in the argument to the jury, as, under the constitutional provision (art. 1, § 16) prohibiting the appropriation of any right-of-way until full compensation therefor be first made in money, or paid into court for the owner, which compensation must be ascertained by a jury, unless a jury be waived, the burden of proof is cast upon the corporation to establish what amount is full compensation.

In a proceeding for the condemnation of lands, the filing by the land owner of what purports to be an answer, though none was required by law, and which alleges facts that could be proved in its absence, does not shift the burden of proof from the petitioner to the defendant.   (SCOTT and DUNBAR, JJ., dissent.)

Where fencing is made necessary by reason of the appropriation of lands for right-of-way, no specific sum should be allowed for fences or crossings as distinct items of damage, but the allowance should be made only to the extent of the depreciation of the market value of the land and the burden of constructing such fence taken into consideration only so far as it affects such market value.   (SCOTT and DUNBAR, JJ., dissent.)

In assessing the amount of damages to property appropriated for a right-of-way, it is admissible in establishing its market value to show its value for any use for which it is adapted, and not merely the use to which it may have been put by the owner.

*Appeal from Superior Court, Snohomish County.*

The facts are stated in the opinion.

*Thomas Burke (Burke, Shepard & Woods, of counsel),* for appellant.

*Hawks & Heffner (Austin & Baker, of counsel),* for respondents.

The opinion of the court was delivered by

ANDERS, C. J.—This was a proceeding by appellant to appropriate a strip one hundred feet wide across the lands of respondents for the purpose of a right-of-way for its railroad. The land consists of a single enclosure containing about twenty-five or thirty acres. It lies in the valley of the Stilaguamish river, in Snohomish county, and is low and level agricultural land, and especially adapted to the raising of hay, for which purpose it seems to have been used for several years. It was also used as a pasture for stock during several months of each year. Appellant's right-of-way passes across the tract in such a manner as to cut off about three acres from the east side thereof, and the grade of the railroad thereon is shown to be about four feet in height. The three acres thus detached from the main body of the land is an angular, wedge-shaped piece. On it is situated a spring, from which the respondents procured water both for domestic purposes, and for stock, by means of an open ditch two and a half feet deep and eighteen or twenty inches wide. The right-of-way lies between the spring and the dwelling house and other improvements of respondents, and the railroad embankment would naturally obstruct the flow of water through the ditch. But the railroad company

29–4 WASH.

stipulated and agreed to construct a culvert across the right-of-way three feet wide and four feet high underneath its road bed, and that the respondents should have the privilege of putting and maintaining a water pipe therein for the purpose of conducting water from the spring to the premises of respondents in the place occupied by the open ditch; and the respondents likewise agreed to construct and maintain said water pipe so as not to interfere in any way with the rights of the company in and to the right-of-way sought to be condemned.    The amount of land included in the right-of-way seems, from the evidence, to be a little less than two acres.    At the trial the jury rendered a verdict in favor of respondents, awarding damages in the sum of $1,148, and judgment was rendered accordingly.    The petitioner brings the case here for review.

At the beginning of the trial both the petitioner and the respondents claimed the right to open and close the case. The court decided in favor of the respondents, and that decision of the court is assigned as error.

Upon the question whether, in cases of this character, the petitioner has the right to open and close, the decisions of the courts of the various states are not uniform.    Where not controlled by statute, the courts all base their decisions on the general principle that the party on whom rests the burden of proof is entitled to begin and reply.    The majority of the cases seem to hold that the burden of proof is upon the land owner, and consequently give the opening and closing to him.    In this state, no private property can be taken or damaged for public or private use without just compensation being first made or paid into court for the owner, and no right-of-way can be appropriated to the use of any corporation, other than municipal, until full compensation therefor be first made in money, or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation, which compen-

sation must be ascertained by a jury, unless a jury be waived, as in other civil cases in courts of record, in the manner prescribed by law. Sec. 16, Art. 1, Constitution. The proceeding must be inaugurated by the party seeking to appropriate the land. This is done by presenting to the superior court of the county in which the land is situated, or to the judge of such superior court in any county where he has jurisdiction or is holding court, a petition describing the land and premises sought to be appropriated with reasonable certainty, and setting forth the name of each and every owner or other party interested in the same, so far as the same can be ascertained from the public records, and the object for which the land is wanted, and praying that a jury be impaneled to ascertain and determine the compensation to be made in money to all persons interested, irrespective of any benefit from any improvement proposed by such corporation, or if a jury be waived, then that the compensation to be made be ascertained and determined by the court or judge thereof. Notice is given to the owner and other parties interested in the premises sought to be appropriated of the time and place, when and where the petition will be presented to the court or judge; and at the hearing of the petition, if the court is satisfied that the contemplated use for which the land is sought to be appropriated is a public use, and that the public interest requires the prosecution of such enterprise, and that the land sought to be appropriated is necessary for the purposes of such enterprise, a jury is summoned by order of the court to assess the damages. Laws of 1889-90, p. 294.

From the above provision of the statute it will be seen that the corporation seeking the condemnation of land for its corporate uses is required to bring the land owner into court in a certain prescribed manner, and to show that the use for which the land is sought to be appropriated is a public use, that the public interest requires the prosecution

of the enterprise in which it is engaged, and that the land sought to be appropriated is necessary for the purposes of such enterprise. As to all of these matters the burden of proof is, of course, upon the petitioner. Having gone thus far, and having come to the question of the amount of damages, does the burden of proof shift to the landowner, or remain with the petitioner? Our statute provides that witnesses may be examined by either party to the proceedings, but no answer or plea is required to be filed to the petition in any case. In contemplation of law, therefore, the amount to be paid is to be determined upon the petition alone, without formal pleadings or issues. No formal pleadings or issues being contemplated or required by the statute, in order therefore to determine which party ought to open and close, it is necessary to consider what is the substantial issue to be established, and on which party is imposed the burden of establishing it.

The substantial fact to be determined, in this class of cases, is not whether the compensation is more than the petitioner concedes to be just, or is willing to pay, as some of the cases would seem to hold, nor whether the compensation to be made is less than the owner of the land is willing to receive, but simply what is full compensation.

The question of damages cannot be tried upon the claim or demand of the landowner. The proceeding is not an action by him to recover damages for land actually taken, but is a proceeding instituted by the petitioner to ascertain what is a full compensation for the taking or injuriously affecting the land; and before the land can be taken at all, the petitioner must proceed affirmatively, and have the amount of compensation "ascertained and determined," according to law, or not succeed in the appropriation. If no proof should be offered, the petitioner would be defeated, and the proceeding would be dismissed. And this being so, the petitioner had the right to begin and reply,

both in the introduction of evidence and in the argument to the jury. See 1 Wharton on Ev., § 357; *Bellingham Bay, etc., R. R. Co. v. Strand, ante,* p. 311; 1 Thompson, Trials, p. 238; *McReynolds v. Burlington, etc., Ry. Co.,* 106 Ill. 152; *South Park Commissioners v. Trustees,* 107 Ill. 489; *Neff v. Cincinnati,* 32 Ohio St. 215; *Fort Worth & R. G. Ry. Co. v. Culver* (Tex. App. Oct. 23, 1889), 14 S. W. Rep. 1013; *Alloway v. City of Nashville,* 88 Tenn. 510; *Montgomery, etc., R. R. Co. v. Sayre,* 72 Ala. 443; *Harrison v. Young,* 9 Ga. 359.

But it is contended in this case on behalf of the respondents that an answer and reply were filed which raised an issue entitling the respondents to assume the burden of proof. It is true that a pleading, purporting to be an answer, was filed in the case, but it was not required by law, and alleged no fact which could not have been proved in its absence. It was a statement of what the respondents claimed to be the value and quantity of the land sought to be appropriated, together with certain other statements showing in what manner and to what extent they would be damaged by the proposed appropriation. It set up no affirmative defense to the proceedings and did not deny anything alleged in the petition, except such matters as the court was called upon, *in limine,* to judicially determine.

And we do not think, as claimed by counsel, that if respondents had failed to appear and give testimony at the trial, the court would have been warranted in directing a verdict for the amount stated in the reply to be the value of the land sought to be appropriated. We are of the opinion that where there is a disagreement between the parties, and the jury is called to "ascertain and determine" the compensation to which the landowner is entitled, the amount of such compensation must be shown by proof, and not inferred merely from what one party is willing to give or the other to take.

It is also contended by appellant that the court erred in permitting testimony to be introduced concerning the cost of putting down water pipes for the purpose of conducting water from the spring across the right-of-way. But we do not see how appellant could have been prejudiced thereby, for the court, on motion of appellant's counsel, struck out all of the objectionable testimony for the reason that that matter was covered by a stipulation between the parties which was on file in the cause.

Appellant further contends that the court erred in permitting witnesses to testify as to the cost of building fences along the line of the right-of-way and of a wagon crossing over the same, and in its instruction to the jury in regard thereto. The instructions complained of are as follows:

"Now, on the question of building a fence, if you find that it would be necessary for respondents or defendants in this case, in order to continue using this land for the purpose to which it is devoted now, for them to have a fence along the track, or on both sides of the track, then you will allow him whatever it is reasonably worth to put up a substantial fence along either or both sides of the track, as the testimony has shown.

"And further, if you find from the evidence that it is necessary for respondents to have a railroad crossing across the track and right-of-way of the railroad, and that it is necessary for them to have this for use for the purposes for which the land is devoted, then you will say how much it will take to build a substantial crossing, and in case that fact has not been established, you can allow a reasonable amount for the building of such crossing, if you find such crossing is necessary."

While the first of these instructions of the learned judge is not unsupported by authority, we nevertheless think it is justly open to criticism, and should not have been given. The amount of damages the owner of the land is entitled to recover is the market value of the land actually taken, irrespective of any benefit from any proposed improve-

ment, together with any depreciation in the market value of the remainder caused by the taking of the right-of-way·

If, by reason of such taking, additional fencing is made necessary, in order that the residue of the land may be conveniently used as the owner may desire to use it, the burden of constructing such fence, in so far as it depreciates the market value of the land, is a proper element to be considered in estimating the damages. Lewis on Em. Dom., § 498. The damages should be estimated in respect to the land, as land, and whatever casts a burden upon it, and thereby detracts from its market value, should be taken into consideration. The cost of necessary fencing and crossings may be shown to aid the jury in determining the extent of the burden thereby imposed upon the land. Lewis on Em. Dom., *supra*. *Stone v. Heath*, 135 Mass. 561. But as it is not certain in all cases, and perhaps not in any case, that the land will be depreciated in value in the exact proportion to the cost of fencing and crossings, no specific sum should be allowed for fences or crossings as distinct items of damage, but the allowance should be made only to the extent of the depreciation of the value of the land. See Lewis on Em. Dom., § 498. *Henry v. Dubuque & Pacific R. R. Co.*, 2 Iowa, 288; *Kennedy v. Dubuque & Pacific R. R. Co.*, 2 Iowa, 521; *Hanrahan v. Fox*, 47 Iowa, 102; *Penn., etc., Canal Co. v. Bunnell*, 81 Pa. St. 414; *Pittsburgh B. & B. R. Co. v. McCloskey*, 110 Pa. St. 436; *Pittsburgh V. & C. Ry. Co. v. Vance*, 115 Pa. St. 325; *Curtin v. Nittany Val. R. Co.*, 135 Pa. St. 20.

Under some circumstances the value of the premises might be greatly enhanced by the building of a fence, and, in such cases, it would be manifestly unjust to compel the railroad company to build, or, which amounts to the same thing, pay for building it in the absence of any statute requiring it to do so. The judge charged the jury, in effect,

that the measure of damages would be the difference between the market value of the premises immediately before and after the appropriation of the right-of-way, irrespective of any benefits from the proposed improvement. He should then have told the jury that in order to arrive at this difference in value, they might take into consideration the burden of increased fencing in so far as the value of the land was thereby depreciated, instead of charging them to allow whatever the evidence showed it was reasonably worth to put up a substantial fence along either or both sides of the track. The instruction respecting the crossing is especially objectionable, for the jury were thereby directed to find the reasonable cost of constructing a crossing, if found to be necessary, even although the same had not been established by the evidence. The jury were not at liberty to determine that or any other question upon mere conjecture without proof.

Appellant also complains of the ruling of the trial judge in permitting the question, ''What is the value of this land for the purpose of raising hops,'' to be propounded to and answered by a witness. It is claimed that this evidence was inadmissible and misleading, for the reason that the land had never been used for raising hops, and that the value put upon it for that purpose was in excess of the real value. Before this question was asked, it had been shown that this land was very fertile and productive, and that it was underdrained and thoroughly prepared for agricultural purposes. It had been devoted to raising hay for several previous years, not because nothing else would grow upon it, but because the hay crop was more profitable than any other. The witness answered that the land was worth three hundred dollars an acre for raising hops; but other witnesses had already testified that it was worth that sum for general agricultural purposes, and especially for raising hay. Appellant could not, therefore, have been prejudiced

by the answer to the question, even if we concede that the question itself was improper, which we do not.

The market value of property is its value for any use to which it may be adapted, and in estimating its value all the uses of which the property is susceptible should be considered, and not merely the condition in which it may be at the time and the use to which it may have been put by the owner. Lewis on Em. Domain, 478. In *San Diego Land & Town Co. v. Neale*, 78 Cal. 63, this question was thoroughly discussed and many authorities cited and reviewed, and it was there held that it was proper to show the value of the land sought to be condemned "as a reservoir site." In *Boom Co. v. Patterson*, 98 U. S. 403, three islands in the Mississippi river were sought to be appropriated for the purpose of a boom. The land had never been used for such purpose, and for any other purpose was of little value. But in view of its peculiar adaptability to boom purposes it was found to have a great value. The supreme court of the United States sustained a verdict for $9,358.83, although the value of the property for general uses was but $300. With reference to the question of value where land is taken by the exercise of the right of eminent domain, the court, by FIELD, J., said:

"In determining the value of land appropriated for general public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be, what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted; that is to say, what is it worth from its availability for valuable uses. Property is not to be deemed worthless because the owner allows it to go to waste, or to be regarded as valueless because he is unable to put it to any use. Others may be able to use it and make it subserve the necessities or conveniences of life. Its capability of being made thus available gives it a market value which can be readily estimated.

Their adaptability for boom purposes was a circumstance, therefore, which the owner had a right to insist upon as an element in estimating the value of his lands."

So, the owner of the land in question, in this case, had a right to show, if he could, that his land was available for the purpose of hop culture, and to insist that its value should be estimated with reference to that circumstance, although no hops had ever been grown upon it.

For the errors above indicated the judgment of the court below is reversed and the cause remanded 'for a new trial in accordance with this opinion.

Hoyt and Stiles, JJ., concur.

Scott, J. (*dissenting*).—I cannot concur in the reversal of this case. Its disposition seems to have been placed upon three grounds: *First*, That the court erred in allowing respondents to open and close; *second*, that the court erred in its instruction in regard to the building of the fence; *third*, that the court erred in its instruction as to the cost and necessity of building a crossing.

Upon the first ground, I am satisfied that, under the legislation existing, the rule adopted by this court in *Bellingham Bay, etc., R. R. Co. v. Strand, ante*, p. 311, is the correct one, but I do not think it should apply to this case, because in this instance the defendants came into court and filed an answer alleging the quantity of land proposed to be taken as two acres, or thereabouts, and the total value of the land to be the sum of six hundred dollars, and alleging various other damages and specifying the amount. Although the law does not contemplate any answer in such a proceeding upon the part of the defendants, and they may show the value of the land taken, and of the damages they would sustain without any answer, and while the burden of proof in such a case would be upon the petitioner to show the right of, and necessity for, taking the land in

the first instance and also to show the compensation to be made, yet the railroad company made no objection to this answer, and did not move against it in any way, but saw fit to take issue on the matters therein alleged by filing a reply thereto, in which it denied that the land it sought to appropriate exceeded one and two-thnths acres in quantity, and denied that the value of said land exceeded one hundred and seventy-five dollars per acre, and it denied the further allegations of damages set up in the answer.

Here the parties voluntarily saw fit to make up an issue as in an ordinary action, and it seems to me the rules governing pleadings in such cases ought to obtain. The answer did not attempt to deny anything with reference to damages alleged, because none were alleged in the petition, nor was the value of the land sought to be taken therein stated, the petition simply prayed that a jury be called to assess the damages. It seems to me, following the ordinary rules pertaining to pleadings and trials, that in this instance had the parties failed to appear, the right to appropriate the land and the necessity for taking it having previously been determined, that the judgment in this case would have gone for the railroad company condemning the land, and finding its quantity and value to be as alleged in the reply. The parties here had agreed that the land was worth at least one hundred and seventy-five dollars per acre, and that at least one and two-tenths acres would be required. The only issues between them were those raised by the reply of the petitioner to the answer of the defendants as to the excess in amount of the land to be taken and of its value as alleged in the answer over that admitted in the reply, and as to the other damages claimed. There was no question of nominal damages in the case. Actual damages had been averred in both the answer and the reply, and the issue was as to the amount.

A singular feature of this case is, that the record nowhere

shows when or how this question as to the right to open and close was raised. After the pleadings and preliminary matters were settled, the cause came on for trial before a jury to ascertain the damages. The defendants first introduced their testimony, and the record fails to disclose that any objection was made to their thus taking the initiative, and when they rested the petitioner called its witnesses. Nothing is said with reference to any argument made to the jury, or as to the right of either party to begin or close the same. Not even in appellant's brief is it directly claimed that the question was raised. The statement therein upon which the argument was based is as follows:

"In a proceeding to condemn land for public uses, and for the assessment of the compensation to be made to the landowner, the petitioner holds the affirmative of the issue, and consequently has the right to begin and reply, both in the introduction of evidence and in the argument to the jury."

And upon this only appellant proceeds to argue the seemingly abstract proposition. Some light is thrown upon the matter by the respondents' brief, in which it is alleged that "petitioner complains of the ruling of the court in permitting respondents to open and close the case before the jury, and assign same as one of the grounds for reversing the judgment." This is a tacit admission that the claim was at some time made, but it being only that, I do not think such an irregularly constructed proposition ought to be sustained to reverse a case upon. It might do to take advantage of matters so appearing for the purpose of affirming a case. Counsel should be particular to see that questions they desire to take advantage of are properly raised.

As to the further point relating to proof of the cost of building the fence, the evidence was properly admitted in any event. The defendants sought to prove the cost of building such a fence as would be necessary. The railroad

company objected thereto on the grounds that such proof was incompetent, irrelevant and immaterial. It had previously been shown that the fence was necessary, and the distance for which one would be required. Whatever be the rule of damages the land owner is entitled to in such cases, the proof, of course, is admissible. It is perfectly proper for the landowner to prove the cost of building the fence as a step to show the damages. In case it is contended by the railroad company that the value of the premises would be increased in a general way by the fence if built, and the damage to the defendants in this respect lessened to that extent, the burden should be held to be upon the company to show such increase. It is a matter of defense so far, and it does not seem to me the defendants should be called upon to prove a negative, or to show that the fence when built would not add anything to the value of the premises, except to inclose the field as against the petitioners, and, in the absence of any other benefit therefrom, the damages would certainly be as much as the cost of building the fence in the first instance.

Furthermore, there was no exception, or any sufficient one, to the instruction given upon this subject. After the conclusion of the charge the attorney for the petitioner undertook to except in these words:

"I would like, if your honor please, an exception as to the matter of crossing, the expense of crossing be adjusted element of damages; and also the matter of building a fence as an element of damage, and the matter of opening the gates or putting up the bars in considering the question of damages."

This exception as it appears in the record is unintelligible, and wholly insufficient to raise any question. He also undertook to except to the refusal of the court in not giving certain instructions presented by the petitioner. The court remarked that said instructions had been handed in too late.

It was proper for the court to instruct the jury that the fence was an element of damage, although the rule of damages he laid down with reference to it was erroneous, and would have been reversible error had there been a proper exception taken thereto, providing there was any testimony that the damage to the owner in consequence of having to build the fence would be any less than the cost of building it.

I do not think there was any harmful error in the instruction as to the crossing, although the charge, if correctly reported, was palpably erroneous in allowing the jury to find the cost of it without proof. But there was proof of it. The record shows the following testimony by one of the defendants:

"Q. State whether or not you would be damaged in any other respect than the ones already mentioned by reason of the road crossing as it does? A. I would have to have a way to cross the track to that piece of property; it would necessitate the building of a crossing and maintaining two gates.

" Q. What would you have to do in order to get a good crossing over this right-of-way, what would be necessary? A. There would have to be stringers placed there, covered with lumber—plank about 3 inches, along there, about 16 feet wide, 5 feet in length.

"Q. That on each side of the track? A. On each side of the track.

"Q. What would be the probable cost of such a crossing? (Objected to as immaterial, incompetent and irrelevant.—No ruling.)

" Q. What would be the cost? A. I would say $150 or $160, counting the gates."

Other testimony was introduced in relation thereto by both sides, and there being testimony to show that it was necessary to build a crossing, and as to the kind of crossing that would be required, and the expense of building it, there was testimony to base a finding upon. But if the instruction is to be considered as saying to the jury that

they could allow the cost of building the crossing without reference to the testimony as to what it would cost, there was no error appellant could take advantage of, for there was no exception to it. The entire exception is given above, and I do not think authority can be found that would sustain an exception of the kind purporting to have been taken in this instance. There is nothing in the record to show that the objections appellant urges here to these instructions were presented to the court below. The specific objections, if any there were, may have been other and different from those urged here. I think, upon the whole case, this judgment should have been affirmed.

DUNBAR, J., concurs.