[No. 33966. Department Two. May 16, 1957.]

PACIFIC NORTHWEST PIPELINE CORPORATION, *Appellant*, v. MARK W. MYERS *et al.*, *Respondents.*[1]

[1]Reported in 311 P. (2d) 655.

*Halverson & Applegate* and *Alan A. McDonald,* for appellant.

*Hawkins & Loy,* for respondents.

RoSELLINI, J.—In these two condemnation actions, the appellant obtained an adjudication of public use covering an

easement which it seeks to obtain across four tracts of land belonging to Mark W. Myers and wife, in Yakima county, Washington, the easement to be used for the installation and maintenance of a ten-inch gas pipe line. A trial was ordered to fix the amount of just compensation for the right of way, and the jury returned verdicts for the respondents in the total amount of $6,600.

On the question of damages, the appellant called three witnesses, who were real estate men from Yakima. One of these testified that the depreciation in market value of the property in question, which would result from the granting of the easement, was $2,277. Another testified that the depreciation would be $2,560, and the third set the amount at $2,574.

The respondents called four witnesses to testify on this question. They were Mark W. Myers, the owner, who asserted that his property would be depreciated in value in the total amount of $9,900; Ernest Myers, a farmer, not related to the respondents, who testified to a depreciation of from five to seven per cent, attributable to the presence of the pipe line in the ground, plus other damages totaling $8,782; Henry Alexander, a farmer, who testified to damages of from $9,300 to $9,850; and Walter Dopps, who had been a real estate salesman in Sunnyside a little over two years and who testified to damages of $8,194.75.

The appellant first complains that it was prejudiced by the admission of the testimony of Ernest Myers, for two reasons: first, because he based a part of his depreciation in value upon fear of gas, when no foundation for such fear had been established; and second, because, instead of using the proper measure of damages, he merely testified to the various items which would affect the difference between the market value of the land before the easement was granted and the market value immediately afterward, and totaled the amounts.

The jury was instructed to disregard all evidence concerning fear of gas, and we see no merit to the appellant's contention that it was prejudiced by the testimony on this matter.

Regarding the witness' testimony concerning the specific items of damage which affect the depreciation in market value, the appellant admits that such evidence is admissible as bearing upon and tending to show the accuracy, or inaccuracy, of the comparative values as estimated by other evidence responsive directly to the before and after rule. *Baker v. Mississippi State Highway Comm.*, 204 Miss. 166, 37 So. (2d) 169.

■ The defect in the testimony of this witness is that, standing alone, it would not support a verdict; but taken in conjunction with the testimony of other witnesses, who testified to a depreciation in value equal to or greater than the total of the damages testified to by this witness, it amounted to no more than a rebuttal of the evidence offered by the appellant and a substantiation of that offered by the respondent. The appellant moved to strike the witness' testimony but did not specify the objectionable portion of it; and, since most of the testimony was admissible, the court did not err in refusing to strike it in its entirety. Where a portion of the evidence offered is admissible, objection must be made to that portion which is inadmissible or the objection is of no avail. *Keen v. O'Rourke*, 48 Wn. (2d) 1, 290 P. (2d) 976.

The appellant next objects to the admission of testimony by the witness Henry Alexander, who, it alleges, was not properly qualified to testify on the question of value. The appellant points out that although the witness had farmed in the vicinity for over twenty years, he had never bought nor sold any land other than the farm he owned; that he had never been upon the Myers' farm but had merely observed it from the road; and that he admitted he was familiar with land values in the area only in a general way. The respondent answers that the witness owns a farm four miles from the Myers' farm, has been a member of the Sunnyside Valley irrigation district since 1946, and has appraised land in this area as a representative of the district.

■■ Whether or not a witness will be permitted to render an opinion as to value is within the sound discretion of the trial court, and unless that discretion has been abused,

this court will not disturb the ruling in admitting such testimony. *State ex rel. Oregon-Washington Water Service Co. v. Hoquiam,* 155 Wash. 678, 286 Pac. 286, 287 Pac. 670; *Traver v. Spokane Street R. Co.,* 25 Wash. 225, 65 Pac. 284. Witnesses who are not strictly experts but who have some knowledge of value may testify. The fact that the knowledge is slight goes to the weight of their testimony rather than to its competency. *State ex rel. Oregon-Washington Water Service Co. v. Hoquiam, supra.*

 Speaking of the knowledge necessary to qualify a witness to testify regarding land values, Professor Wigmore says:

"A sufficient qualification is usually declared to exist where the witness is a resident, land-owner, or farmer, *in the neighborhood.*" 3 Wigmore on Evidence (3d ed.) 44, § 714.

The reason for this, the writer says, is that such a person has both the interest and the opportunity to make himself familiar with land values around him.

 In view of these rules and principles, which the courts have generally applied, we do not think that permitting the witness to testify constituted reversible error. While his knowledge was slight and his testimony probably entitled to little weight, his evidence was admissible for whatever it was worth.

The appellant assigns error to the giving of three instructions. Two of these correctly stated the applicable law, but the third was worded in such a way that it enabled the jury to impose a double measure of damages; and in view of the large verdicts (more than three times the value of the land included in the easement), we believe that the appellant is entitled to a new trial.

The appellant has no quarrel with the measure of compensation enunciated by the court in instruction No. 19, the first part of which reads:

"Your verdict should fairly and adequately compensate respondents for the legal rights taken from them. The proper measure of this compensation is the difference between the fair market value of each entire tract through

which said right-of-way actually passes, without said ease-
ment and right-of-way, and the fair market value of each
of said tracts through which said fifty foot right-of-way
passes after the taking of said easement, but before any
work is done on the easement or in the easement by the peti-
tioner, Pacific Northwest Pipeline Corporation or its agents."

It maintains, however, and we are inclined to agree, that
the remainder of the instruction permitted the jury to com-
pensate the respondents for the depreciation in market value
of their land and to add to that depreciation compensation
for all of the items which are considered in determining the
amount of depreciation. Having told the jury that the
measure of compensation for the *legal rights* taken from the
respondents was the difference in market value before and
after the right of way was granted, the court continued:

"In arriving at this difference, you should take into con-
sideration the *actual legal rights taken and also* the follow-
ing items: (a) depreciation, if any, due to the existence
of the pipeline itself; (b) loss of crops, if any, this year and
future years; (c) loss, if any, of use of pasture due to the use
by the corporation of said fifty foot right-of-way and tem-
porary easements this year and in future years; (d) reason-
able expense, if any, to respondents in keeping cattle from
said fifty foot right-of-way now and in the future and dur-
ing periods necessarily required in order to re-establish the
crops and pasture on said fifty foot right-of-way; (e) reason-
able expense, if any, to respondents in building and main-
taining necessary works to insure proper irrigation of the
land during such times as said corporation shall have the
right to occupy said fifty foot strip under the terms of its
easement; (f) reasonable expense, if any, to respondents in
keeping water from said fifty foot strip during periods of
construction, replacement and repair; (g) reasonable ex-
pense, if any, to respondents, in leveling and re-leveling
said fifty foot strip and hauling of additional soil to fill
settlements; (h) reasonable extra expense, if any, to re-
spondents caused by said fifty foot right-of-way due to the
interference thereof with the operation of said dairy herd
farm unit and said cattle feeding farm unit; (i) reasonable
extra expense, if any, to the respondents in puddling the
trench in which said pipeline will be laid in preventing
water from seeping along said pipeline, and preventing con-
sequent damage; (j) extra reasonable expense, if any, to the

respondents of regrading, replanting and caring for, and seeding said fifty foot right-of-way; (k) reasonable damages, if any, to crops and land due to the necessity of keeping water off during periods of occupancy of said right-of-way by said corporation under the terms of its easement; (l) such other reasonable expenses, if any, supported by the evidence, reasonably necessary to restore said premises to normal productivity." (Italics ours.)

While the listed items may have a bearing on the depreciation in market value which would result from the granting of the easement, they could not be considered as distinct items of damages. (*Seattle & Montana R. Co. v. Murphine*, 4 Wash. 448, 30 Pac. 720.) It was not proper for the jury to consider them in addition to the legal rights taken, the value of which, the jury had previously been told, was this same difference in market value. All of the testimony pertained to the listed items, and there was no testimony regarding the value of the "legal rights" taken, apart from the depreciation in value brought about by these factors. The giving of the instruction was prejudicial error, and a new trial must be granted.

The appellant also objects to the inclusion of items (f) and (k), pertaining to the necessity of keeping water off the right of way during periods of occupancy, maintaining that there is no language in the terms of the order of public use or the decree of appropriation requiring the respondents to keep water off the right of way. The appellant's engineer testified on cross-examination that the respondents would be expected to refrain from putting water on the fifty-foot right of way during the period of occupancy, and there was considerable testimony regarding the expense which would be involved in the event it became necessary to irrigate while the construction work was going on.

While it is true that the order of public use does not mention the duty of the respondents to refrain from irrigating across the right of way while it is occupied under the terms of the easement, according to the testimony of the appellant's engineer, such irrigation would make it difficult if not impossible to carry on the installation operation.

Since this is the case, putting water on the right of way would constitute an interference with the easement, and if the respondents would be put to some expense in avoiding this interference, that is a factor to be considered in determining their loss.

The appellant complains of the court's refusal to give its requested instruction No. 15, which reads as follows:

"You are hereby instructed that in your deliberations regarding market value of the property you must consider that the pipeline will be constructed, maintained and operated in a proper and lawful manner. You are not entitled to assume that there will be negligent construction, operation or maintenance, so as to cause damages in excess of that which would naturally and proximately arise from proper construction, operation and maintenance."

The instruction was proper and pertinent to the issues. The jury may well have drawn the inference, from the testimony of some of the respondents' witnesses, that the work would not be done with due care. The subject matter of the instruction was not covered by other instructions. On retrial of the cause, an instruction to this effect should be given if requested, and if the evidence warrants it.

Since there is to be a new trial, we need not consider the appellant's assertion that the verdicts were so excessive as to indicate that they were the result of passion and prejudice.

The judgment is reversed, and the cause is remanded for a new trial.

HILL, C. J., SCHWELLENBACH, DONWORTH, and FOSTER, JJ., concur.

July 8, 1957. Petition for rehearing denied.