# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

KATHRYN COX,

  Respondent/Cross-Appellant,

v.

JOHN COX,

  Appellant/Cross-Respondent.

No. 82167-9-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, J. — After their dissolution was finalized, Kathryn (Katy) Cox sued her former husband, John Cox, for negligent infliction of emotional distress, assault, and battery, during their marriage. A jury awarded Katy $1,000,000 in damages.[1] John appeals and argues: (1) the trial court erroneously admitted evidence related to pre-2015 incidents and erred in refusing to admit exhibits containing admissible facts about Katy's state of mind, (2) the jury verdict and judgment should be vacated for lack of substantial evidence showing negligent infliction of emotional distress, (3) the trial court erred in refusing to allow a jury instruction on comparative fault, and (4) Katy's

---

[1] We refer to the parties by their first name for clarity, we intend no disrespect.

Citations and pin cites are based on the Westlaw online version of the cited material.

witnesses and counsel engaged in misconduct, depriving him of a fair trial. Katy filed a conditional cross appeal arguing, should we reverse and remand to a new trial, the trial court erred in limiting her tort claim to incidents post-March 2015 because of the continuing tort doctrine. We affirm.

FACTS

John and Katy married in November 1986. On July 18, 2017, the parties finalized the dissolution of their marriage. Under the dissolution decree, Katy was awarded spousal support of $15,000 per month—50 percent of John's salary. Katy was also awarded 50 percent of any future annual bonus John receives.

On March 23, 2018, Katy filed a complaint alleging intentional and negligent infliction of emotional distress against John based on "a pattern of physical abuse, sexual assault, denigration, financial control, and threats" throughout the parties' marriage. John moved to dismiss the action and various allegations because they were barred by the statute of limitations. The trial court denied the motion to dismiss but found that any claims based on conduct before March 23, 2015, were time-barred by the three-year statute of limitations for tort claims. RCW 4.16.080(2). Katy filed an amended complaint conforming to the order and added a claim for civil assault and battery. Both parties moved for summary judgment.

On August 20, 2020, the trial court granted John's motion in part, dismissing Katy's claims for intentional infliction of emotional distress and assault and battery based on a sexual encounter between the parties in September 2016. The court held that Katy could pursue the negligent infliction of emotional distress claim and the assault and battery claim based on other alleged incidents. The court emphasized that

consistent with the prior ruling on John's motion to dismiss "any indignities previously endured by Ms. Cox serve to contextualize whatever incidents occurred after 2015. At the very least, an issue of fact exists which a jury should decide, not this court." The trial occurred in front of a 12-person jury over 9 days in October 2020. The trial court denied John's pretrial motion in limine to exclude evidence of misconduct prior to March 2015. The court recognized that prior incidents could provide context to the post-2015 actions, stating, "some of the alleged incidents of physical violence that occurred prior to March of 2015 are properly admitted under 404(b)" because they reveal "intent when [John] was committing the acts that are the basis of [Katy's] claim," and to display his "knowledge of the impact his behavior would have on [Katy]."

To reduce potential prejudice, the trial court explained that it would only permit evidence of specific incidents, rather than general allegations of misconduct. Due to lack of specificity or unfair prejudice, the court excluded general references to abusive behavior and incidents of prior drinking or gambling. The court also ruled that circumstantial reference to suicide or suicidal ideation during expert testimony was inadmissible.

The trial court recognized that three separate incidents that occurred within the statute of limitations formed the compensable allegations of misconduct that the parties would present to the jury. First, in January 2016, Katy was lying in bed and John came into the room and pushed her into the bed "as hard as he could." Second, in March 2016, John went to the house to retrieve some of his items and he was "frantic and angry and scary." Katy did not want to let him in, but he violently forced his way into the house and pushed Katy against a wall, choking her. Katy changed the locks on the

house.  Third, in September 2016, while the dissolution proceedings were pending, John invited Katy to his apartment.  Katy drove to John's apartment, hoping it might be an opportunity to reconcile.  John and Katy had a sexual encounter and Katy testified to telling John to wait and stop, and that she felt confused and "[didn't] know what this means."

The trial court ruled that the parties could present a few specific pre-2015 incidents to the jury to provide context for Katy's tort claims.  First, in 1986, after a night of drinking with friends in the family home, John became angry and started punching and hitting Katy.  John was arrested and spent the night in jail.  Second, in the summer of 1998, the family was preparing to go on their annual family vacation in Gearhart, Oregon.  While Katy was backing out of the driveway, John angrily reached into the car and twisted Katy's arm because Katy failed to write a check John asked for.  Third, in 2005, John and Katy had an argument while at the vacation home in Gearhart.  During an argument, John pushed Katy down the stairs.  Finally, in April 2011, while the parties were separated, John went to the family home and began "banging on the door and screaming," and then forced his way inside the house.  The police came and John eventually left the home.  The parties' daughter, Jessica Cox, was a witness to the 2005 and 2011 incidents.

At trial, Dr. Mary Lemberg, a psychiatrist, testified as Katy's first witness.  Dr. Lemberg first saw Katy in November 2017, a few months after the dissolution decree.  As of October 2020, Dr. Lemberg continued to see Katy twice a week for therapy sessions.  Dr. Lemberg diagnosed Katy with posttraumatic stress disorder (PTSD) and major depressive disorder.  During her testimony, Dr. Lemberg once testified that Katy

reported trauma based in part on John's alcohol and gambling addiction, and once about Katy's "suicidal ideation." Each time, John objected and the trial court struck the testimony and instructed the jury to disregard the testimony. John moved to strike Dr. Lemberg's entire testimony, claiming that Katy's attorney elicited illegitimate, prejudicial testimony, and that striking her entire testimony was the only effective remedy for John. The trial court denied the motion noting the "fleeting nature" of Dr. Lemberg's response, and "given that I've instructed the jury to disregard it," I "would not find the way in which she testified or the information which she testified to be unduly prejudicial to Mr. Cox."

Jessica, an attorney and the Coxes' daughter, also testified. Jessica was asked about the family trips to Gearhart, Oregon. Jessica testified that they stopped going because "my dad would have explosions and it was embarrassing for us and it became an issue." John's counsel did not object. Jessica was then asked about the April 2011 incident. At the time, Jessica was in her early 20s, graduated from college, and was living at the family home in Sammamish. Jessica testified that her mother was frightened and tried to keep her father from entering the house. Jessica stated:

> I don't know what other people's experiences are with cops or restraining orders, but it's a lot of bullshit in my opinion. And that—that really makes —didn't make me feel safer, I don't think my mom.

> But, yeah, I know at the time I went to the kitchen. I grabbed a knife. I never showed it to my dad, but I initially like took a bunch of lemons and I thought, oh, maybe this will help and just throwing lemons at him, which is so insane. But I threw lemons at him.

John's counsel did not object.

Ultimately, however, John's counsel moved to strike arguing that he was disconcerted by Jessica's reference to John's explosions and antics and her remark that

restraining orders are "bullshit." The trial court offered to instruct the jury to disregard the offending testimony, but John's counsel withdrew any motion to strike, stating that he did not want to "ring the bell again." He instead asked the trial court to instruct the jury that no restraining order has ever been entered against John, consistent with the evidence rules. The court granted his request.

Dr. Diane DeWitt, a counseling and vocational psychologist, testified as a forensic psychologist after examining Katy. Dr. DeWitt administered several tests and assessments and concluded that Katy suffered depressive disorder and PTSD. As for causation, Dr. Dewitt testified:

> Psychologists look at the entire story when they do an evaluation. The Court is focused on some timeframes more than others. My testimony is the same whether you're asking for specific incidents or whether you're asking for the entire history.

John's counsel objected to the question because it was nonresponsive and argumentative. The trial court agreed. Dr. Dewitt then explained that Katy met the diagnostic criteria of PTSD because "the cumulative effect of the various incidents added up to the level of threat that would be required to reach that diagnosis." John moved to strike the testimony, but the trial court denied the motion.

Katy testified that shortly after finalizing the dissolution in 2017 she sought treatment at three different mental health facilities. During cross-examination, John sought to introduce medical records from a treatment summary from Swedish Medical Center, a psychological evaluation from Fairfield Behavioral Health, and treatment progress notes from Malibu Vista facility. John argued that the medical records proved

the dissolution was the cause of Katy's psychological distress, and he sought to introduce the medical records as evidence of Katy's prior inconsistent statements.

The trial court did not admit the exhibits, but allowed John's counsel to read portions of the medical records into the record during Katy's cross-examination. For example, Katy conceded that the Swedish records included a note from a health care provider that Katy was "not going to get better unless her husband moves back in or does the right thing and honors the prenuptial agreement." Katy also admitted that the Fairfield records stated that she was "quite upset about the recent financial decisions" and the provider had written that Katy "found out four days ago that she will have to make some changes financially, which she is not willing to make and is moving on to continue with legal proceedings to appeal." John's counsel also asked Katy to read from the Malibu records, which included a treatment note stating, "Client stated, 'I will never move on. I refuse. I use distraction and do not want to get past what happened, the divorce.' Client stated, 'If things don't change and I get what I want, I will never accept things and move forward.'"

At the close of evidence, John sought admission of the medical records again. The trial court refused to admit the records, explaining that Katy did not deny the statements in the record and John did not call a witness to provide proper foundation to admit the records.

John proposed a special verdict form including a question about Katy's negligence, allowing the jury to allocate fault to Katy and John. The trial court refused to give the instruction or contributory negligence claim to the jury stating that it did not find sufficient evidence to support contributory negligence in this context. But the trial

court granted John's request for an instruction on superseding cause, stating, "I do think that there is evidence, and it's for the jury to make that determination about whether or not there have been other things that superseded the events in this case that may have caused damage instead."

The jury found John liable on both the assault and battery claim and the negligent infliction of emotional distress claim. The verdict was unanimous with only one juror disagreeing as to the amount of damages. The jury awarded Katy $1,000,000. John moved for a new trial arguing that the repeated violations of the trial court's orders on motions in limine amounted to prejudicial misconduct and that evidence of John's pre-2015 conduct prejudiced him. The trial court denied the motion.

John appeals.

ANALYSIS

A. <u>Evidentiary Issues</u>

John argues first that the trial court abused its discretion in several evidentiary rulings. Specifically, John challenges the trial court's decisions: (1) not to strike the testimony of Dr. Lemberg in its entirety, (2) not striking Jessica Cox's testimony, (3) allowing Dr. DeWitt to offer causation testimony based on events that occurred before March 2015, and (4) not admitting Katy's medical records. We disagree.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. <u>State v. Stenson</u>, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997). A trial court abuses its discretion when its decision "'is manifestly unreasonable or based upon untenable grounds or reasons.'" <u>Salas v. Hi-Tech Erectors</u>, 168 Wn.2d 664, 668-69, 230 P.3d 583 (2010) (quoting <u>Stenson</u>, 132 Wn.2d at 701). A decision is based on

untenable grounds or reasons "if the trial court applies the wrong legal standard or relies on unsupported facts." Salas, 168 Wn.2d at 669. Trial courts are granted wide discretion in balancing the probative value of evidence against its potentially prejudicial impact. Stenson, 132 Wn.2d at 702.

First, John argues that the court erred in not striking Dr. Lemberg's entire testimony. John's objections were based on Dr. Lemberg's testimony referencing Katy's initial report of John's "alcohol and gambling addictions," and Katy's "suicidal ideation." However, in both instances the trial court sustained John's objections, struck the statements, and instructed the jury to disregard them. Jurors are presumed to follow the trial court's instructions to disregard improper evidence. Pac. Nw. Pipeline Corp. v. Myers, 50 Wn.2d 288, 290, 311 P.2d 655 (1957). John fails to show how the trial court proceeded unreasonably or abused its discretion.

Second, John argues that Jessica violated the court's rulings and the trial court abused its discretion when it denied his motion to strike her testimony. John's attorneys did not object during the testimony. At the end of the day when the jury left, John's counsel moved to strike her testimony due to Jessica's testimony about her father's explosions and her experiences with law enforcement officers and restraining orders. The next day, John's attorney withdrew the motion to strike and requested a special limiting instruction that the jury should disregard the testimony about restraining orders. The court clarified counsel's request stating: "[s]o you're proposing that I not mention the other two comments about Mr. Cox's antics and Mr. Cox's explosions at Gearhart, but inform the jury that there has never been a restraining order against Mr. Cox[?]" John's counsel replied, "[t]he primary one I'm concerned about is the restraining order.

At this time, no remedy as to the others." The court granted the limiting instruction. John cannot claim the trial court abused its discretion when he failed to object, withdrew the motion to strike, received a limiting instruction he specifically requested, and told the court not to remedy the statements he now complains of.

Third, John argues that Dr. DeWitt improperly testified that her opinions about Katy's depressive disorder and PTSD were based on "the entire story," "the incidents embedded in [the marital] relationship," and "the entire history." John objected and the court sustained the objection. Again, John fails to establish how the trial court manifestly abused its discretion in sustaining the objection.

Finally, John argues that the court abused its discretion in refusing admission of the medical records that "showed that [Katy] repeatedly admitted to her medical providers that her anxiety and major stress were from the 2017 dissolution."

There was already ample evidence in the record, however, for John to make these same arguments. John's counsel admitted, "I think there's other evidence in the record of this as well, thank you." Counsel read relevant statements from the medical records into evidence, Katy did not deny the statements, and Dr. DeWitt and Anna Goeke, Katy's therapist, testified that Katy expressed concern regarding the dissolution. John again fails to cite support or thoroughly argue why the refusal to introduce these statements results in reversible error. The trial court did not err in refusing to submit the medical records.

B. Sufficient Evidence

John argues next that he was entitled to judgment as a matter of law on the negligent infliction of emotional distress claim because there was no evidence to sustain the jury's finding. We disagree.

Judgment as a matter of law is proper "when, in construing the evidence in a light most favorable to the non-moving party, it can be held as a matter of law that there is no evidence, nor a reasonable inference therefrom, to sustain a verdict in favor of the party." Kohn v. Georgia-Pacific Corp., 69 Wn. App. 709, 716, 805 P.2d 517 (1993). The question is for the jury if there is evidence or justifiable inferences from the evidence on which reasonable minds might reach different conclusions. Am. Prods. Co. v. Villwock, 7 Wn.2d 246, 256, 109 P.2d 570 (1941). "[W]hen the trial court denies a new trial, the jury's verdict is strengthened and appellate courts owe even greater deference to the judgment of the jury." Coogan v. Borg-Warner Morse Tec, Inc., 197 Wn.2d 790, 811, 490 P.3d 200 (2021).

To prove negligent infliction of emotional distress, Katy needed to present proof that John's conduct post-March 2015 was "unreasonably dangerous or offensive" and that the conduct was the proximate cause of Katy's emotional symptoms. John contends the sexual encounter in September 2016 was consensual and therefore could not be considered unreasonably dangerous or offensive.

The inquiry here is whether there is evidence on the record, or justifiable inferences, which may lead the trier of fact to different conclusions. Villwock, 7 Wn.2d at 256. While John claims the sexual encounter was consensual, Katy testified that she did not consent to his advances and that she was crying, asking him to wait and to stop.

Katy testified to being confused about the incident and sought her therapist. Goeke testified that "it was a very difficult incident for Ms. Cox." The jury heard John's testimony claiming the sexual encounter was consensual, Katy's testimony claiming the sexual encounter was not consensual, and testimony of Katy's emotional state after the experience. The jury had sufficient evidence to conclude that John acted in an unreasonably dangerous or offensive manner during the sexual encounter.

John further contends that there was insufficient evidence for the jury to conclude that the other two incidents: (1) pushing Katy into the bed and (2) twisting her arm, proximately caused Katy's emotional distress. We disagree.

Dr. DeWitt testified that the only known context to explain Katy's major depressive disorder and PTSD at the time of evaluation was the marital relationship and the incidents in the relationship, including the 2016 incidents. The evidence of causation need not be concrete, it simply must be reasonable to infer a causal connection when construing all facts and all reasonable inferences from the facts in favor of the nonmoving party. See Martini v. Post, 178 Wn. App. 153, 166, 313 P.3d 473 (2013). Thus, there was substantial evidence presented to the jury for it to find that John's actions caused Katy's PTSD and depressive disorder.

C. Special Verdict Form

John argues that Katy provoked John with her own conduct and voluntarily placed herself in situations she later claimed caused harm. Thus, he contends, the trial court erred in refusing to give a special verdict form allowing the jury to allocate fault to Katy. We disagree.

-12-

The trial court has wide discretion in deciding "whether to give a particular instruction." Terrell v. Hamilton, 190 Wn. App. 489, 498, 358 P.3d 453 (2015). "Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law." Keller v. City of Spokane, 146 Wn.2d 237, 249, 44 P.3d 845 (2002). A trial court may decline an instruction not supported by substantial evidence. Humes v. Fritz Cos., Inc., 125 Wn. App. 477, 496, 105 P.3d 1000 (2005).

A defendant seeking to allocate fault has the "burden of pleading and proving the plaintiff's negligence is on the defendant," as is the burden "of proving allocation of those damages." Cox v. Spangler, 141 Wn.2d 431, 444, 447, 5 P.3d 1265 (2000). The jury instructions unambiguously told the jury that Katy bore the burden of proving John's negligence. Here, as the trial court noted, John did not ask for instructions explaining that it was his burden to prove Katy's negligence or the allocation of damages. The trial court acted well within its discretion in denying John's proposed special verdict form that would have directed the jury to allocate fault to Katy. The special verdict form was legally insufficient because it conflicted with the jury instructions. Capers v. Bon Marche, Div. of Allied Stores, 91 Wn. App. 138, 143-44, 955 P.2d 822 (1998) (it is error to give a special verdict form inconsistent with jury instructions).[2]

Moreover, John was able to argue his theory of the case—that the cause of Katy's emotional distress was something other than his misconduct—without his special

---

[2] John also argues that the jury should have been instructed on contributory negligence and that the trial court specifically noted that John proposed a contributory negligence instruction—pattern instruction 11.01. However, CR 51(d)(2) explains "[w]here the refusal to give a requested instruction is an asserted error on review, a copy of the requested instruction shall be placed in the record on review." John did not designate the instruction in the record, therefore we cannot review the issue.

-13-

verdict form. The trial court granted John's alternative request to include a "superseding cause" instruction. The proximate cause instruction emphasized that "there may be more than one proximate cause" of the plaintiff's injury. Finally, the trial court instructed the jury that it must "fairly compensate the plaintiff for such damages as you find were proximately caused by the negligence of the defendant."

Thus, the jury could have found that some other cause was either a superseding cause or another proximate cause. John's counsel argued exactly that during closing argument. Reminding the jury that "Instruction 17 is the superseding cause." John's counsel argued that if "there's another cause that breaks the original direct chain, then you need to consider that, and they have not met their burden of establishing causation." John's counsel also argued, "the superseding cause here obviously is the divorce . . . the finalization of the divorce."

Because the jury instructions permitted John to argue his theory of the case, they were sufficient even without John's special verdict form.

D. Attorney Misconduct

John argues that he is entitled to a new trial because Katy's attorney persistently interjected improper arguments and evidence throughout the trial to convey to the jury an alleged long pattern of abuse. We disagree.

A party seeking a new trial based on attorney misconduct must establish that (1) the conduct constitutes misconduct as distinct from aggressive advocacy, (2) the misconduct is prejudicial in the context of the entire record, (3) the misconduct was objected to and a curative instruction was requested, and (4) the misconduct was not cured by the court's instruction to the jury. Teter v. Deck, 174 Wn.2d 207, 226, 274

P.3d 336 (2012). The trial court is in the best position to most effectively determine whether counsel's misconduct prejudiced a party's right to a fair trial, therefore, we review denial of a motion for a new trial for abuse of discretion. Miller v. Kenny, 180 Wn. App. 772, 809, 325 P.3d 278 (2014). We must "defer to the reasoned judgment of the trial court unless some prejudicial effect is clear from the record." Coogan, 197 Wn.2d at 806. Misconduct justifies a new trial where "the conduct complained of constitutes misconduct (and not mere aggressive advocacy) and that the misconduct is prejudicial in the context of the entire record." Aluminum Co. of Am. v. Aetna Cas. & Sur. Co., 140 Wn.2d 517, 539, 998 P.2d 856 (2000).

John first fails to establish misconduct. In his opening brief, John explains that his counsel objected 91 times and that 75 were sustained. Then John states that Katy presented a case based on the decades-long relationship, which was not allowed in the trial. But John fails to establish how Katy's counsel's tactics were designed to prejudice John specifically, rather than reflect zealous activism. Miller, 180 Wn. App. at 815 (affirming denial of new trial where there had been an usually large number of objections from both sides and almost all of [the moving party's] objections to leading questions were sustained).

Second, John fails to establish prejudice. The trial court addressed John's concern in denying the new trial. The trial court stated many instances of improper testimony complained of were fleeting and the jury was instructed to disregard the stricken testimony. The court explained that John "also elicited prejudicial and irrelevant testimony during the course of this trial," and that "both the Plaintiff and the Defendant pushed the envelope as to negative information about the other party." Many objections

complained of do not pertain to the motions in limine and the trial court allowed specific prior incidents of John's misconduct in under ER 404(b), so reference to these acts and prior instances does not constitute misconduct or prejudice. In the context of the entire record, Katy's counsel's objections throughout the trial fail to show prejudice.

The trial court did not abuse its discretion in denying John's motion for a new trial.

E. Cross Appeal

Katy argues that, should this court reverse and remand for a new trial, the trial court erred in limiting Katy's tort claim to John's abuse after March 23, 2015, because of the continuing tort doctrine. Because we affirm, the cross appeal is moot.

Affirmed.

_Mann, J._

WE CONCUR:

_Brennan, J_      _Coburn, J._

-16-